**Jon CLAY, Plaintiff-Appellant,**

v.

**UNION CARBIDE CORPORATION, Brent Towing Company, Inc., Capital Marine Service, Inc., Dow Chemical Company, Inc., Allied Chemical Company, Inc., Exxon Corporation, and Thibodaux Marine Service, Inc., Defendants-Appellees.**

No. 87-3125
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 6, 1987.

Harry E. Forst, New Orleans, La., for plaintiff-appellant.

E. Kim King, William J. Sommers, New Orleans, La., for Exxon Corp.

Boris F. Navratil, Baton Rouge, La., for Allied Chemical Co.

Robert W. Morgan, Plaquemine, La., Dalles J. Pagel, Houston, Tex., for Dow Chemical Co.

Robert M. Contois, Jr., Charles E. Leche, New Orleans, La., for Union Carbide.

James F. Shuey, New Orleans, La., for Capital Marine.

C.J. Hebert, New Orleans, La., Joel J. Henderson, Greenville, Miss., for Brent Towing Co.

Lawrence E. Abbott, New Orleans, La., for Brent Towing and Thibodaux Marine.

Before RUBIN, REAVLEY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

The present lawsuit was initiated by plaintiff Jon Clay seeking recovery from the various defendants for personal injuries suffered as a result of inhaling chemical vapors while employed as a crew member aboard river pushboats that transported chemical barges on the inland waterways. After some discovery in the case, defendants moved for summary judgment dismissing Clay's claims as time-barred under the applicable statute of limitations. The district court took the matter under advisement and subsequently granted all of defendants' motions, dismissing plaintiff's suit. Plaintiff then timely filed this appeal. We affirm.

## I.

The material facts relevant to this appeal are not in dispute and are drawn principally from Clay's sworn deposition. As is required on appeals from summary judgment dismissals, we view the evidence and any inferences in the light most favorable to Clay, *Richoux v. Armstrong Cork Corp.*, 777 F.2d 296, 297 (5th Cir.1985), and set them out below accordingly.

From 1969 until mid–1976 Clay worked on the Mississippi River as a pilot aboard pushboats owned by various of the defend-

ants. During that time Clay was exposed to toxic chemicals, which were manufactured by other defendants, carried in barges moved by the pushboats on which he worked. Clay was exposed to the chemicals contained in the chemical company barges when vapors were released from vent pipes and when liquid chemicals leaked into open drip pans. The odors were most noticeable when he was physically out on the barges, but Clay claims to have been exposed to chemical-laden air almost constantly in the pilot houses and sleeping quarters of the pushboats as well.

During the time he worked on the pushboats, Clay developed various physical ailments. As described in his deposition, those ailments included laryngitis, difficulty breathing, nausea, burning eyes, headaches, bronchitis, memory loss, mental confusion, dizziness, prostate gland trouble, erratic heartbeats, sinus congestion, and a productive cough. During an acute laryngitis attack Clay went to see a doctor. While there, Clay told the doctor that he believed his symptoms were related to his work around chemicals. Clay's symptoms improved and he felt better when he was not working on the pushboats. Clay testified that he did not experience health problems at or near his residence in Baton Rouge. Clay associated his symptoms with the chemicals and complained to his captain that he would get sick when the wind blew chemical fumes from the barges in the direction of the pushboat. Clay did not have problems when working around coal or grain barges. Finally, in 1977 Clay changed jobs; in order to avoid further exposure to chemical vapors, he became a pilot on pushboats that pushed only coal and grain.

In 1985 Clay was examined by Dr. Velma Campbell who diagnosed him as suffering from "chronic respiratory complaints" aggravated by his cigarette smoking, his overweight condition, and "prolonged exposure to irritant vapor and fumes." On September 6, 1985, Clay filed suit against the defendants, asserting claims under the Jones Act, 46 U.S.C. § 688, and the General Maritime Law for personal injuries allegedly suffered as a result of exposure to toxic chemicals.

Clay claimed that until he visited Dr. Campbell he did not possess the critical facts necessary to start the statute of limitations running against him. Defendants, on the other hand, claim that Clay's suit is time-barred. They argue that Clay suffered a discernible injury and had sufficient knowledge of the critical facts of his injuries and the cause thereof to commence the running of the statute of limitations during his employment on the barges.

## II.

The applicable statute of limitations for Clay's Jones Act claims provides that suit must be commenced within three years from the date the cause of action accrued. 45 U.S.C. § 56; *Albertson v. T.J. Stevenson & Company, Inc.*, 749 F.2d 223, 228 (5th Cir.1984). Clay's General Maritime Law claims are also subject to a three year statute of limitations. 46 U.S.C. § 763a.[1] Because Clay filed this suit on September 6, 1985, his suit is timely filed only if his cause of action accrued after September 5, 1982. The critical issue, therefore, is when Clay's cause of action accrued.

## III.

The most thorough and most recent discussion of Fifth Circuit law on accrual of tort claims is contained in *Albertson v. T.J. Stevenson & Company, Inc.*, 749 F.2d 223 (5th Cir.1984). *Albertson* lays out the factors to be considered in determining whether the "Time of Event Rule" or the "Discovery Rule" should apply to determine when a claim accrues for purposes of

---

**1.** Title 46 U.S.C. § 763a took effect on October 6, 1980. The Fifth Circuit has held that section 763a should be given effect from the date of its enactment, but claims that accrued prior to 1980 will remain viable for three years after date of passage of section 763a. *Cooper v. Dia-* *mond M Company,* 799 F.2d 176, 178 (5th Cir. 1986). Thus, any of Clay's General Maritime Law claims that accrued prior to 1980 would have to have been filed by October 6, 1983, in order to be timely.

starting the clock running on the statute of limitations.

■ As the court in *Albertson* noted, a cause of action for tort accrues when there has been an invasion of the plaintiff's legally protected interest, usually at the time the tortious act is committed. *Id.* at 228. Thus, in most cases the Time of Event Rule applies and the statute of limitations begins to run from the time plaintiff was injured. *See id.* at 229. If, however, plaintiff has sustained "a latent injury which either is not or cannot be discovered until long after the tortious act that caused the injury has occurred ... courts have routinely applied the so-called discovery rule." *Id.*

■ The court in *Albertson* discerned two types of latent injury cases: pure latent injury cases and traumatic event/latent manifestation cases. *Id.* A pure latent injury case is one in which "the plaintiff fails to discover either the injury or its cause until long after the negligent act occurred." *Id.* at 230. On the other hand, "[a] traumatic event/latent manifestation case is one in which the plaintiff has sustained both immediate and latent injuries caused by a noticeable, traumatic occurrence. At the time of the traumatic event, the plaintiff realizes both that he is injured and what is responsible for causing the injury. The full extent of the harm, however, has not become manifest." *Id.* at 231. The Discovery Rule applies only to pure latent injury cases, whereas the Time of Event Rule applies to traumatic event/latent manifestation cases. *See id.* at 232 n. 8. Fifth Circuit law requires application of the Time of Event Rule whenever the plaintiff is aware of or has had reasonable opportunity to discover "the critical facts of his injury and its cause." *See id.* at 233; *cf. Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315, 317 (5th Cir.1986) (Plaintiff's suit was not premature because his symptoms were sufficient to make him aware of physical injury resulting from being drenched with toxic chemical.).

The court in *Albertson* applied the above-stated rules to dismiss as time-barred Albertson's personal injury claims arising from his exposure to toxic chemicals while serving as a seaman. The facts of *Albertson* are analogous to those in this case. In late 1968 and early 1969, while on a four month tour aboard an ocean-going vessel, Albertson used undiluted trichlorethylene (TCE), a toxic chemical, to clean electrical apparatuses on the vessel. While using the TCE, Albertson lost consciousness and experienced severe headaches and nausea on several occasions. The headaches, nausea, and periodic blackouts continued after he stopped using the TCE, and Albertson sought medical treatment within two months of returning to port. For years Albertson continued to suffer and developed additional physical and mental maladies, although he claimed that no doctor ever told him what caused his problems until 1980 when a physician told him that a causal connection probably existed between his exposure to TCE and his continued poor health. Albertson filed suit against his employer in 1981, twelve years after he was exposed to the TCE. The court held that Albertson knew or had a reasonable opportunity to discover the critical facts of his injury and its cause at the time of his last exposure to TCE, and that his cause of action accrued at that time. *Albertson*, 749 F.2d at 233. Thus, Albertson's case was one of traumatic event/latent manifestation, and the fact that he lacked knowledge of all of the alleged consequences of his injury did not justify a departure from the time of event rule. *Id.*

■ Clay claims that his case is distinguishable from *Albertson* because of the differences between the nature and severity of his ailments and those of Albertson. Clay characterizes the trauma he suffered at the time of his exposure to the chemicals as minor physical ailments, which he distinguishes from Albertson's severe headaches and blackout spells. Clay argues strongly that when a worker suffers minor physical annoyances, such as headaches, transient dizziness, or congestion that he causally connects to his work environment, such knowledge should not be considered an invasion of a legal interest sufficient to start

the statute of limitations running against him thereby precluding suit when he is later found to be suffering from a serious occupational illness. Clay's argument has merit and is not foreclosed by *Albertson.* In fact, the *Albertson* court specifically stated: "This is not a case in which, coinciding with the trauma, an injured seaman experienced and noticed only a minor injury and at a later time discovered an unexpected latent injury that was unknown and unknowable at the time of the traumatic event." 749 F.2d at 233. Thus, a worker's knowledge of physical annoyances caused by his work environment that are precursors of a more serious occupational disease does not necessarily constitute possession of or reasonable opportunity to discover the critical facts and cause of his injury, which is necessary to start the statute of limitations.

■ Clay, however, does not find himself in such a situation. Clay had knowledge both of his injuries and their cause while he was working on the barges. In his deposition Clay acknowledged that while he worked on the barges he suffered from a whole host of ailments, which he continues to suffer from to this day. Many of those ailments, difficulty breathing, bronchitis, dizziness, sinus congestion, and productive cough, are respiratory in nature and are virtually identical to Dr. Campbell's 1985 diagnosis of "chronic respiratory complaints." Thus, Clay possessed or had reasonable opportunity to discover the critical facts of the injury he claims to have suffered. Clay's deposition also reveals that he knew or had reasonable opportunity to discover the cause of his injury. For example: Clay knew his symptoms were worse when he was around the chemicals; when he visited the doctor about his laryngitis Clay attributed his condition to working around the chemicals; and, finally, Clay changed jobs and began working on pushboats that pushed only grain and coal barges in order to get away from the chemicals and the ailments they caused him. Dr. Campbell's 1985 opinion that Clay's complaints were aggravated by prolonged exposure to irritant fumes merely confirmed Clay's own beliefs.

We hold, therefore, that Clay either possessed or had a reasonable opportunity to discover the critical facts of his injury and its cause by mid–1976, the time he was last exposed to chemical vapors while employed aboard defendants' pushboats transporting barges full of defendants' chemicals. Clay's cause of action accrued at that time, and, consequently, is barred by the applicable statutes of limitations.

For the above-stated reasons, the defendants are entitled to judgment as a matter of law and the judgment of the district court is, accordingly, AFFIRMED.