**William CRISMAN and Patricia Crisman, Plaintiffs–Appellants,**

v.

**ODECO, INC., Defendant–Appellee.**

**No. 90–3472.**

United States Court of Appeals,
Fifth Circuit.

May 31, 1991.

---

Richard C. Broussard, Bob F. Right and William P. Rutledge, Domengeaux & Wright, Lafayette, La., for plaintiffs-appellants.

Alan Guy Brackett and Maurice C. Hebert, Jr., New Orleans, La., for defendant-appellee.

Before THORNBERRY, JOLLY, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiff William Crisman suffers from loss of hearing and hypersensitivity to chemicals, allegedly because of his exposure to petroleum-based chemicals while serving on vessels owned by his employer, defendant Odeco, Inc. (Odeco). The district court held that Crisman's suit was time-barred because he either knew or should have known, long before he filed this suit, that his injuries were linked to his work. 736 F.Supp. 712 (E.D.La.1990). Because we agree that the statute of limitations bars Crisman's suit, we affirm.

## I.

Crisman alleges that he sustained a hearing loss, a chemical toxicity disorder, and respiratory injuries because he worked with petroleum-based chemicals while employed by Odeco; his wife, Patricia Crisman, asserts a claim for loss of consortium.

Crisman began to work for Odeco in 1970 as a mechanic, primarily aboard drilling rigs. During his work, Crisman was exposed to Glidden DuPont paint; he experienced headaches and a burning sensation in his respiratory passages that did not abate until he returned home. Crisman subsequently was transferred to another rig, where he was required to do welding inside the stability tanks. Crisman alleges that for six years the welding fumes caused headaches and sinus problems that again would abate when he returned home. Crisman did not consult a physician or notify anyone at Odeco of his problems.

In 1975 or 1976, Crisman was transferred to another rig, where he again used Glidden paint. Crisman once again experienced headaches and respiratory problems, but still failed to report his medical problems to a physician or Odeco until 1979. Crisman also alleges that he was exposed to paint thinners and many other chemicals that gave off fumes, causing headaches and respiratory problems, but only when he was at work.

Crisman admitted that he knew that these problems were work-related, and by 1978 or 1979 Crisman had complained to his supervisors and co-workers about his headaches. He did not, however, indicate that the headaches were anything extraordinary or request a transfer to another job.

The records of Crisman's health insurer in 1983 list Crisman as suffering from "allergic rhinitis" and indicate that the symptoms first appeared in "1963, worse in recent times." Between 1984 and 1987, Crisman signed seventeen claims forms listing his condition as having begun in 1963. On a claim form dated September 26, 1987, and signed by Crisman, he stated that the illness resulted from his occupation, and specifically noted that the duration of his illness was over twenty years. Three other forms from the same company indicate that the disease had begun in either 1983 or 1984, still more than three years prior to the filing of this suit. Each of these claims forms was signed by Crisman, who does not dispute the diagnosis, although he does deny having assigned 1963 as the onset of his illness.

Finally, Dr. G.D. Sagrera testified that he had told Crisman some time before 1979 that his respiratory injuries were contact conditions caused by something that Crisman either ate or touched and that in 1976 he had told Crisman that his hearing loss was caused by heavy machinery noise.

Similarly, the records of a hearing specialist show that Crisman's hearing loss was known and stable by 1979. Based upon the above facts, the district court concluded that Crisman had actual knowledge of all his injuries more than three years before he brought this case and that he knew or should have known that they were caused by his work. The court thus dismissed the suit as time-barred.

## II.

■ A cause of action under the Jones Act and general maritime law accrues when a plaintiff has had a reasonable opportunity to discover his injury, its cause, and the link between the two. *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir.1984). The statute of limitations under either law is three years from the date of injury. *Id.;* 46 U.S.C.A.App. § 763a (West Supp.1991).

■ Crisman had both actual and constructive knowledge of his injury long before 1985. We confronted a similar case in *Albertson*. There, the plaintiff worked with toxic chemicals without a respirator. After experiencing severe headaches, he sought medical treatment for ten years. During this time his injuries gradually grew worse, until he finally filed suit twelve years after his exposure. 749 F.2d at 227.

We held that the time of injury dictated when the prescriptive period began. Although the full extent of the plaintiff's symptoms were hidden, we used the concept of notice ("storm warning") to hold that Albertson's case was time-barred:

It is generally accepted that a cause of action for a tort accrues when there has been an invasion of the plaintiff's legally protected interest. Ordinarily, this invasion occurs at the time that the tortious act is committed. If some injury is discernible when the tortious act occurs, the time of the event rule respecting statute of limitations applies, and the plaintiff's cause of action is deemed to have accrued. If the plaintiff later discovers that his injures are more serious than originally thought, his cause of action

nevertheless accrues on the earlier date, the date he realized that he had sustained harm from the tortious act.

*Id.* at 228–29 (citations omitted, emphasis added). We thus held that Albertson had the duty to evaluate his injury to determine whether his symptoms were more serious than they first had appeared:

Application of the time of event rule, rather than the discovery rule, reflects the collective legislative and judicial judgment that a plaintiff possessing knowledge of the critical facts of his injury and its cause has the duty to comply with the applicable statue of limitations and make the defendant aware that he will pursue a claim against it. A plaintiff armed with these facts cannot argue persuasively that the time of event rule offends notions of fair play and substantial justice, *even though he is unaware of all of the facts related to his injury or its cause.*

*Id.* at 232 (emphasis added).

■ Statutes of limitations are intended to protect defendants from stale claims by affording plaintiffs "what the Legislature deems a reasonable time to present their claims," while still preventing the trial of cases impaired "by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979). Thus, when an event occurs that should put a plaintiff on notice to check for injury, this is sufficient to start the prescriptive period running. This is true even if the event results in only minor physical effects, *Hagerty v. L & L Marine Servs., Inc.*, 788 F.2d 315, 317 (5th Cir.), *modified on other grounds*, 797 F.2d 256 (5th Cir.1986), and applies to Jones Act cases. *Id.*

This conclusion is reinforced by *Clay v. Union Carbide Corp.*, 828 F.2d 1103 (5th Cir.1987), in which we confronted a plaintiff standing in very much the same posture as Crisman occupies today. We upheld the district court's grant of summary

judgment in favor of the defendant, stating,

> Clay had knowledge both of his injuries and their cause while he was working on the barges.... [M]any of those ailments, difficulty breathing, bronchitis, dizziness, sinus congestion, and productive cough, are respiratory in nature and are virtually identical to Dr. Campbell's 1985 diagnosis of 'chronic respiratory complaints.' Thus, Clay possessed *or had reasonable opportunity to discover the critical facts of the injury he claims to have suffered.* Clay's deposition also reveals that he knew or had reasonable opportunity to discover the cause of his injury. *For example: Clay knew his symptoms were worse when he was around the chemicals.*

> .    .    .    .    .

> We hold, therefore, that Clay either possessed or had a reasonable opportunity to discover the critical facts of his injury and its cause by mid–1976.

*Id.* at 1107 (emphasis added). We reach the same result today.

Crisman attempts to avoid application of *Albertson* and *Clay* by asserting that his symptoms were completely latent, like those of the plaintiff in *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Unfortunately for Crisman, we agree with the district court that "Crisman's deposition is replete with testimony that indicates that he was aware or should have been aware of his illness."

Even taking Crisman's statements as true, and ignoring that he had signed insurance papers stating that his injuries had begun as early as 1963, Crisman admitted in his deposition that he actually knew *at the time of exposure* that the paint and solvent fumes caused his physical problems and that he had complained to his supervisors and co-workers about these substances. Furthermore, Crisman states in his deposition that these symptoms occurred *only* at work and disappeared when he left work for extended periods of time, a fact that we already have held should put a plaintiff on notice that he has suffered an injury. *Clay,* 828 F.2d at 1107. By the early 1980's, Crisman experienced these problems *almost every time* he went to work.

Moreover, in 1979 Crisman's physician informed him that workplace toxins might be causing his problem. Crisman's insurance forms list, alternatively, 1963 and 1984 as the date of the onset of his illness, making 1987 the latest he could have filed his suit timely.[1] All these factors were sufficient to support the district court's determination, especially considering that the burden was "on the claimant to allege and to prove that his cause of action was commenced within the three-year period."[2]

Crisman's symptoms, which occurred only at work, and which by his own admission he knew were connected to the materials he used at work, put him on notice that he had suffered a work-related injury. Because these symptoms occurred, at the latest, in 1984, the district court properly held that Crisman had actual notice of a work-related injury. Thus the cause of action certainly had lapsed well before the filing of this suit.

Unlike the plaintiff in *Urie,* Crisman knew that the workplace chemicals were causing him trouble, but simply chose not

---

1. Crisman questions this evidence by asserting that although he signed the forms, he did not write the information on them. The district court, however, reasonably charged Crisman with knowledge of the information contained on the forms. Furthermore, considering the wealth of evidence arrayed against Crisman establishing that he knew he was suffering from a work-related injury, his knowledge of the information on the forms merely is cumulative.

2. *Emmons v. Southern Pac. Transp. Co.,* 701 F.2d 1112, 1118 (5th Cir.1983) (Federal Employers' Liability Act (FELA) case). As for the standard used in evaluating FELA actions, to which we often look for guidance in Jones Act cases, *see, e.g., Boeing Co. v. Shipman,* 411 F.2d 365, 372 (5th Cir.1969) (en banc), Crisman correctly points out that the standard is more lenient than that which applies in the ordinary action. Unfortunately for Crisman, however, even following that more lenient standard does not help him. As shown above, facts from Crisman's own deposition establish his knowledge. In the wake of *Clay* and *Albertson,* it is certain that Crisman was on notice that he should pursue his cause of action.

to sue until his claim had grown stale. "Once a plaintiff possesses critical facts, ... legal and medical professionals are available to give advice to an injured person concerning whether he has been legally wronged." *Dubose v. Kansas City S. Ry.*, 729 F.2d 1026, 1029 (5th Cir.1984). By the early 1980's, Crisman would spend one week at work, become ill, return home for one week, and recover.[3] He may have had a valid cause of action then, but he did not pursue it. This was fatal for, once "a plaintiff should reasonably have been aware of the critical facts of injury and causation," he must bring suit. *Id.* at 1030. The district court thus did not err by failing to grant Crisman the benefit of the discovery rule.[4]

■ Crisman alternatively asserts that even if limitations bars his suit, the continuing nature of Odeco's actions mandate that the prescriptive period should run from the time that Crisman *last* worked with paint solvents. Under the "continuing tort" theory, so long as the employer negligently or intentionally continues to inflict new harm upon the employee, that employee is not required to file suit to avoid losing a valid claim.

3. Crisman's employer used a seven-days-on/seven-days-off schedule common within the industry.

4. Crisman also contends that even if his claim was prescribed, this was a determination for a jury, and not a judge, to make. What Crisman ignores, however, is that even looking only at evidence supporting Crisman, *see Wilkerson v. McCarthy*, 336 U.S. 53, 57, 69 S.Ct. 413, 415, 93 L.Ed. 497 (1949), this case was one appropriate for summary judgment. The district court's decision can rest squarely upon only the items submitted by Crisman. The court was not weighing the evidence, as Crisman contends, but rather evaluating a case that presented no disputed facts material to the limitations issue. While evaluating when a plaintiff reasonably was put on notice ordinarily is a factual determination, in this case there was such an overwhelming array of evidence indicating that the case was time-barred that summary judgment was appropriate. Considering that the burden was on Crisman to establish compliance with the statute of limitations, *cf. Emmons*, 701 F.2d at 1117, the district court did not usurp the jury's factfinding function by granting summary judgment.

Our opinion in *Emmons* rejects the continuing tort theory where the employer did not know of the employee's condition. In *Emmons*, the employee suffered from polio, which had weakened his ankle. The railroad nevertheless assigned him to brakeman duty, which stressed his ankle. Seeking to avoid the FELA's prescriptive period, Emmons, like Crisman, attempted to use *Fowkes v. Pennsylvania R.R.*, 264 F.2d 397 (3d Cir.1959), as support for the continuing tort theory.

We rejected this attempt, as the railroad had no knowledge that its actions were a continuing tort. We approvingly quoted the district court, which had held that "[w]ithout such knowledge on the part of [the railroad] there can be no continuing tort." 701 F.2d at 1121.

Crisman never alleged that he had requested a transfer to another job and never suggested that Odeco knew of his alleged physical problems. Because these were the factors that the *Fowkes* court used to toll the statute of limitations, and because the *Emmons* court indicated that these were the important factors needed to invoke the continuing tort theory, Crisman cannot utilize that theory here.[5]

5. In his reply brief, Crisman cites *Donaldson v. O'Connor*, 493 F.2d 507 (5th Cir.1974), as a case applying the continuing tort doctrine. That case involved a mental patient who wrongfully was committed to an institution. We held that his cause of action did not accrue until he was released from prison, because "[w]hen a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases." *Id.* at 529. *Donaldson* is a special case, however, for even though the patient knew of the cause of action earlier, he could not file his suit, as the tortfeasor physically prevented him from doing so. This case is in marked contrast to cases like Crisman's, where he could have filed the suit, but simply chose not to.

We also reject Crisman's claim for aggravation of injuries. The case Crisman cites for this proposition, *Fletcher v. Union Pac. Ry.*, 621 F.2d 902 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981), involved two separate torts. The aggravation-of-injuries theory requires the employer to commit a *new*, separate tort that causes additional injuries to a plaintiff. In this case, however, Odeco did not take any new actions that it had any reason to know would harm Crisman. It simply continued to assign him to his job. Crisman does not

In short, Crisman had the burden of proving that his suit fell within the prescriptive period. Because he failed to show why he did not bring it earlier, despite his knowledge that his physical problems were caused by his work, the district court properly held that this suit was time-barred. The judgment is AFFIRMED.

allege that he brought his hypersensitivity to Odeco's notice, apart from a few routine complaints he made to a supervisor that sometimes the paint thinners gave him headaches. Before Crisman can invoke the aggravation-of-injuries rule, he must point to an underlying tort that occasioned these injuries. *Urie*, 337 U.S. at 169, 69 S.Ct. at 1024. Because he cannot, the district court did not err by dismissing the allegation of aggravation of injury.