JERRY E. SMITH, Circuit Judge,
dissenting:
I respectfully dissent. This case is relatively easy. This court established a bright-line rule in Crisman v. Odeco, Inc., 932 F.2d 413 (5th Cir.1991), under which the statute of limitations has run on Pretus’s claim. End of story, affirm Judge Heartfield’s decision to grant summary judgment.
The panel majority, however, ignores the rule altogether. Instead, it decides the case on a variety of “considerations,” which, before now, had never been announced or even suggested. This directly violates our rule of orderliness, which mandates that Crisman’s bright-line standard governs. In addition, the majority deeply confuses the important factors we examine when determining whether to toll limitations, and it mischaracterizes what constitutes a “traumatic event.”

*487
I. Rule of Orderliness and Crisman

In Crisman, as here, the plaintiff worked on an oil rig, spending one week at work then one at home. Id. at 417. While on the rig, he “experienced headaches and a burning sensation in his respiratory passages that did not abate until he returned home.... [T]he welding fumes caused headaches and sinus problems that again would abate when he returned home.” Id. at 414. “Crisman states in his deposition that these symptoms occurred only at work and disappeared when he left work for extended periods of time.... ” Id. at 416. “Crisman experienced these problems almost every time he went to work.” Id.
We squarely held that this pattern of being sick while at work and feeling better while at home[1] “should put a plaintiff on notice that he has suffered an injury.” Id. (citing Clay v. Union Carbide Corp., 828 F.2d 1103, 1107 (5th Cir.1987)).
Crisman would spend one week at work, become ill, return home for one week, and recover. He may have had a valid cause of action then, but he did not pursue it. This was fatal for, once a plaintiff should reasonably have been aware of the critical facts of injury and causation, he must bring suit.
Id. at 417 (footnote, internal quotation marks, and citation omitted) (emphasis added). This bright-line rule was based on Clay, 828 F.2d at 1107, in which a plaintiffs knowledge that “his symptoms were worse when he was around the chemicals” put him on notice to sue.
Pretus’s symptoms are not reasonably distinguishable from those in Crisman. In deposition he stated,
It would act like a cold. It would, you would cough and you’d get tightness in your chest and you’d get, you’d cough up some clear phlegm and then it turned yellow phlegm and then turn to green phlegm and if, if you don’t get out of your system, you start a fever.... Towards, towards the end of the hitch and you’d go home and you’d get well at the house and you’d come back and start all over again.
Pretus’s medical report confirms that “[h]e would be well on return home, but have symptoms when he went back to the rig.” The evidence is undisputed: Pretus suffered from same pattern of illness that we examined in Crisman.
Our rule of orderliness “forbids one of our panels from overruling a prior panel.” Teague v. City of Flower Mound, Tex., 179 F.3d 377, 383 (5th Cir.1999). We have only three options. First, we could find that Pretus does not fall under the rule. As discussed above, this is impossible, because his facts are materially indistinguishable[2] from those in Crisman. Second, we could find that Crisman itself violated our rule of orderliness, and some earlier precedent forbids this bright-line test. This too cannot be done, however, because in Crisman we relied on a rule promulgated in Clay, and there is no language in any of our earlier cases forbidding this bright-line rule.[3] The third, final, and only proper and available option is *488 to apply the Crisman test, find it is “fatal”[4] to Pretus’s claim, and affirm.
Instead, however, the majority completely ignores the test and our rule of orderliness and decides the case based on “considerations,” using a definitive list that no previous court has ever found to be controlling. Although it would be fair in many circumstances to debate whether a bright-line rule or a factor-based test would be preferable in these pattern-of-illness cases, that debate already took place in Crisman — the bright-line rule won.
All that the majority opinion will do is generate more litigation of this case in district court. But in the end, the same rule of orderliness that the majority ignores will ensure that Crisman’s bright-line rule continues to govern even after this case is decided. Crisman controls, and our rule of orderliness mandates that Judge Heartfield’s judgment be affirmed.

II. The Majority’s “Considerations”

Even if this case were to be decided based on some kind of balancing test, the majority errs in identifying the “considerations” — better referred to as factors— that it claims governs Jones Act limitations cases. To begin, the majority essentially fabricates these considerations in a way that meets Pretus’s requirements, picking from earlier cases a variety of “rules” that leads to a reversal of the judgment.[5] Because I fear that later panels and parties will rely on these stated factors and confuse the state of the law, I briefly discuss how they are flawed.
The majority’s first consideration is “the severity of the traumatic event and initial symptoms.” Although that is a factor to
be examined by any court in similar cases, the majority’s statement of the rule is seriously mistaken. It establishes much too high a bar for the severity of injuries. Admittedly, some of our earlier cases have featured plaintiffs with rather serious symptoms, such as memory loss in Clay and blackouts in Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 227 (5th Cir.1984). But life-threatening or critical injury is not required to put a putative plaintiff on notice. In Crisman, the plaintiff did not black out or have memory loss but only had “headaches and respiratory problems.” Crisman, 932 F.2d at 414.
Pretus’s symptoms are not as serious as those in Clay or Albertson but are easily comparable to those in Crisman. Although the majority attempts to portray Pretus as having mere “cold-like symptoms,” it ignores the severity of those symptoms and fails to mention how Pretus coughed up multi-colored phlegm and had significant chest tightness. A minor sore throat or a couple days’ runny nose may not put a plaintiff on notice, but Pretus’s symptoms crossed the “minor physical annoyance” line, see Clay, 828 F.2d at 1106, that we have established.
Once this barrier is crossed, severity of symptoms is only a part of our analysis. More serious symptoms such as blackouts and memory loss will make it more likely the plaintiff should have been on notice, but suffering from less serious symptoms will not guarantee that he qualifies for the discovery rule.
The majority’s next consideration is “the plaintiffs correlation of his ultimate injury with the traumatic event.” The majority claims that if a plaintiff is suing on symp *489 toms different from the ones from which he initially suffered, limitations is tolled.
This is in direct contradiction to our earlier cases. In Albertson, 749 F.2d at 232, the plaintiff argued that limitations were tolled because initially he had suffered from headaches and blackouts, but he was suing based on later-developed ailments such as “blisters!,] • • • his liver ailment, behavioral disorder, and other psychological problems.” We rejected that defense, recognizing that what matters is not when the plaintiff recognized his later-developed, more serious symptoms, but instead when he notices his first symptoms that gave him “a reasonable opportunity to discover the critical facts of his injury.” Id. at 233.
Thus, Pretus may not have discovered the extent of his injuries until later, but the fact that he should have been on notice from his pattern of illness means that limitations were not tolled. This consideration, as identified and applied by the majority, is inapposite and not a part of any proper Jones Act limitations analysis.
The majority’s final consideration is “the plaintiffs reasonable reliance on the opinions of medical experts.” The majority holds that if a plaintiff has seen a doctor and has been given a clean bill of health, limitations are tolled until he is diagnosed. This court, however, has flatly and repeatedly rejected that rule.
In Albertson, we described how the plaintiff met with numerous doctors, none of whom diagnosed his condition. Id. at 227-28. He was finally diagnosed by a doctor more than a decade after he had first seen a physician regarding his symptoms, and he sued immediately after that diagnosis. We nonetheless held that the statute of limitations had run.
Similarly, in Clay, the plaintiff had met with doctors to discuss his illness but was not diagnosed until years later. Clay, 828 F.2d at 1105. He too sued immediately, and again this court found that even though his final diagnosis was made only a month before he sued, limitations had run. Id.
To prove its stated rule, the majority relies on only one case, Taurel v. Central Gulf Lines, Inc., 947 F.2d 769 (5th Cir.1991). Taurel’s holding, however, is not in conflict with Judge Heartfield’s finding that Pretus’s suit is time-barred. In Tau-rel, the plaintiff was tested for asbestos-related problems, but his tests were negative; later, he was diagnosed with asbestosis. Id. at 770-71. This court held that limitations had not run. Id. at 772. That decision, however, was informed by unique circumstances: Taurel had been tested for the same disease with which he was eventually diagnosed. He could not have been any more vigilant.
Pretus may have visited a physician during his time on the vessel, but he was not vigilant enough to get tested for his eventual disease based on his pattern of illness. His doctors’ notes clarify that the only way to diagnose hypersensitivity pneumonitis (“HP”) is by finding the kind of pattern Pretus suffered from. Had he approached a doctor, described the pattern to seek treatment for HP, and been told he was not suffering from the disease, this case would then be governed by Taurel, and limitations would be tolled. That is not, however, what happened to Pretus, so the discovery rule does not apply.
As I have shown, the majority’s “considerations” are deeply flawed. The first overstates the test for serious injury, and the second and third have been flatly rejected by earlier precedent.

III. The “Traumatic Event”

Finally, the majority errs in the way it uses the phrase “traumatic event.” The *490 majority claims that limitations have not run in this case in part because Pretus has not experienced a “discrete traumatic event.” That conclusion, however, confuses what we require for a traumatic event.
In Albertson, this court coined the “traumatic event” phrase to describe when a plaintiff should be on notice about his injury; we used the label to discuss Beech v. United States, 345 F.2d 872 (5th Cir. 1965) — in which the plaintiff had slipped on a floor in a government building — and then applied the label to the situation at bar. Albertson, 749 F.2d at 231-32. The majority’s new notion — requiring a “discrete traumatic event” to trigger the running of limitations — apparently derives from cases such as Beech. Indeed, when one thinks of a traumatic event, one pictures something like a fall (as in Beech) or an explosion or plane crash.
For our purposes, however, “traumatic event” is not a single spectacular event, but instead merely an occurrence or series of events that leaves the plaintiff on notice of his injury. Slipping on a floor would qualify, but so would severe headaches after months of breathing toxic fumes. Whether that event was, in fact, “traumatic” is of little help, except to the degree that a truly traumatic event is more likely to put a plaintiff on notice.
Our caselaw requires this reading of the phrase. In Albertson, the plaintiff periodically experienced blackouts and severe headaches and suffered from nausea throughout the voyage. Albertson, 749 F.2d at 226-27. This was not one traumatic event, but several minor ones combined with voyage-long symptoms. In Clay, the plaintiff suffered from chemical exposure that occurred constantly while he worked on his barge; again, there was no one single traumatic event. Clay, 828 F.2d at 1104-05. The same kind of injury occurred in Crisman, where the plaintiff incurred his injuries after years of inhaling fumes. Crisman, 932 F.2d at 414. These cases prove that there does not need to be one specific, traumatic event that leads to injury, but only enough to put the plaintiff on notice that he had been or was being harmed.
This case is surprisingly simple. Crisman created a bright-line rule, Pretus’s pattern of illness is identical to the one in Crisman, and therefore we must affirm the summary judgment. Crisman and its bright-line rule can be overturned by this court only by en banc vote, a Supreme Court decision, or legislation, not by a panel’s blindness to a governing case.
Our rule of orderliness does not permit a panel majority to dodge a controlling test altogether. Judge Heartfield correctly granted summary judgment and should be affirmed. I respectfully dissent.

. I call this the "pattern of illness.”

. Pretus's precise illness may differ from the plaintiff's illness in Crisman, but the pertinent fact — the pattern of illness — is indistinguishable.

. In addition, in the eighteen years since Crisman was decided, it has never been questioned by this court. It has, however, been cited favorably by several panels. See, e.g., Servicios-Expoarma, C.A. v. Indus. Mar. Carriers, Inc., 135 F.3d 984, 988 (5th Cir.1998); Bealer v. Mo. Pac. R.R. Co., 951 F.2d 38, 40 (5th Cir.1991).

. Crisman, 932 F.2d at 417.

. I do not suggest that the majority is result-oriented in its methodology. The fact is, however, that the way in which the majority fashions its ‘'considerations” is considerably tilted to Pretus’s benefit.