

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | § | No. 08-13-00268-CV |
| Appellant, | § | Appeal from the |
| v. | § | 34th District Court |
| SALVADOR L. ACOSTA, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2012-DCV01607) |
| | § | |

## **O P I N I O N**

In this permissive interlocutory appeal, BNSF Railway Company challenges the trial court's denial of its motion for summary judgment. We reverse the trial court's order, render summary judgment in favor of BNSF, and dismiss the case.

### **FACTUAL SUMMARY**

On May 22, 1978, Salvador Acosta began working for BNSF, where he served as a flagman, a machine operator, and a trackman laborer over a 31-year period. Acosta's last physical day on the job was March 21, 2010.

In two to-whom-it-may-concern letters dated April 23, 2010, Acosta described the pain and injuries he suffered in 1993 or 1994 and in 2005. In one letter, Acosta described that while

working on a "regional gang on the Colorado division" in "1993-1994," he was replacing plates with a hook for a new rail to be laid and suffered pain from his lower back to his calf. Acosta was already in pain that day from "doing the same [j]ob" for the previous two to three months. Upon reporting his condition to his road master and advising that he was not resting at night due to pain, Acosta was permitted to have the day off to see a doctor. A doctor prescribed pain medication for Acosta but after the pain continued, Acosta was sent for medical imaging "throughout the years until now" and was also sent to physical therapy. Acosta described that "[a]s the years went by," doctors referred him to an orthopedic specialist who informed him that he was suffering from arthritis in his lower back but was fine and able to return to his job and to continue his medication. In his conclusion, Acosta claimed that "[a]fter all these years of working with the same pain[,] it has gotten worse to the extreme," "from all the pain in my back[,] I can't bend down to do my job," and "the pain keeps me from doing my job."

In his second letter, Acosta explained that he was assigned to work on the back of a train loaded with concrete ties in Fort Sumner, New Mexico, in 2005. Acosta's left foot fell through a hole as he walked on the deck. Using a radio, Acosta called for help without response and tried to get out of the hole and return to work. A few minutes later, a mechanic who had observed Acosta from a distance came to his aid and also called by radio for help with no response. Acosta and the mechanic thereafter continued working. Acosta did not have any immediate pain but awakened the next day with severe pain from his lower back and left hip to the bottom of his calf. Noting that he had been seen by doctors on many occasions and had obtained medical imaging, Acosta reported that his results were always the same and that he was diagnosed with arthritis and prescribed pain medication. By March 2010, his pain had worsened and an MRI was performed.

2

A doctor informed Acosta that he had two dislocated discs on his lower back with hernias, and prescribed spinal injections and physical therapy to assist with pain management.

The record contains portions of Acosta's medical reports. In notes dated April 6, 2010, physical therapist Todd Marcee reported that Acosta was diagnosed with lumbar radiculopathy. Acosta described intermittent low back pain over the preceding fifteen years and frequent exacerbation, with current symptoms including pain through the buttocks and into the left calf.[1] Acosta said that the initial onset of his low back pain occurred "in 1993-94" with constant pain in his back registering "8 to 9/10," and intermittent pain in the thigh and leg.

In his notes of May 12, 2010, Dr. Brett Henderson reported an "MRI of [Acosta's] left spine shows very mild degeneration of the L4-L5 and L5-S1 segments" but there was "no significant disc bulging or nerve compression."[2] Dr. Henderson determined that "[t]his probably represents a recurrent lumbar strain," and indicated that Acosta "would likely need axial and core muscle strengthening to have any hopes of getting better and [returning] to work, however given his age and his nature of his work, this is probably not likely." His final recommendation was that Acosta "does not need any type of surgical intervention."

Dr. Scott Protzman assessed Acosta on June 1, 2010, and observed that Acosta is not likely to be able to return to his line of work "at all" as a trackman for BNSF due to some of the degenerative changes in his back.[3] Dr. Protzman opined that it was appropriate for Acosta to perform work at a medium duty level "in a lighter duty position," but he could not return to his previous position.

---

[1] Only one of four pages comprising the report is present in the record.

[2] The first page of this two-page report is not present in the record.

[3] The first and third pages of this three-page report are not present in the record.

On January 17, 2012, Acosta filed a negligence suit against BNSF under the Federal Employer's Liability Act (FELA) seeking damages of $5,000,000. *See* 45 U.S.C.A. § 51. He alleged that due to the nature of his job, he had sustained injuries and wear and tear on his body over the course of his employment which had a cumulative effect such that he was no longer able to perform his duties as of April 25, 2010. In response to discovery requests, Acosta specified that he had suffered hearing loss, back and hip injuries and severe pain in those areas, herniated discs, and sciatic pain in his left leg and calf. During his deposition, Acosta acknowledged that he did not suffer any injury between 2005 and when he was last "on the job" in 2010.

BNSF moved for summary judgment contending Acosta's suit is barred by the three-year statute of limitations applicable to FELA actions. 45 U.S.C.A. § 56. The trial court ordered that the motion be granted in part and denied in part. The trial court determined Acosta's claim for hearing loss was barred "by the applicable statute of limitations" and dismissed that claim with prejudice. The trial court left pending Acosta's other claims relating to his back and hip injuries, herniated discs, severe back and hip pain, and sciatic pain in the left leg and calf.

Stating that an immediate appeal may materially advance the ultimate termination of the litigation, the trial court granted BNSF permission to pursue this interlocutory appeal pursuant to Section 51.014(d) of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 168 for the purpose of resolving two controlling questions of law on which the trial court believed there is substantial ground for difference of opinion.[4] TEX.R.CIV.P. 168;

---

[4] Rule 168 provides that on a party's motion or on its own initiative, a trial court may permit an appeal from an interlocutory order that is not otherwise appealable, as provided by statute. Permission must be stated in the order to be appealed. An order previously issued may be amended to include such permission. The permission must identify the controlling question of law as to which there is a substantial ground for difference of opinion, and must state why an immediate appeal may materially advance the ultimate termination of the litigation. TEX.R.CIV.P. 168. Section 51.014(d) provides that on a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if: (1) the order to be appealed involves a controlling

4

TEX.CIV.PRAC. & REM. CODE ANN. § 51.014(d)(West Supp. 2014). The questions posed ask: (1) whether the continuing tort theory applies to toll the statute of limitations; and (2) whether the aggravation rule applies "to allow for recovery for aggravation of an injury that occurred prior to the limitations period." The trial court's order directs that if we answer either question in the negative, Acosta's claim for cumulative orthopedic injuries is time-barred and should be dismissed.

**THE FELA**

FELA provides that every railroad engaging in interstate commerce is liable in damages to any employee injured during his employment when such injury results in whole or in part from the railroad's negligence or by reason of any defect or insufficiency due to its negligence. *See* 45 U.S.C.A. § 51. In its sole issue, BNSF complains Acosta's FELA suit is barred by the statute of limitations set forth in 45 U.S.C.A. § 56, which provides that no action shall be maintained unless it is commenced within three years from the day the cause of action accrued. 45 U.S.C.A. § 56. BNSF urges us to answer the specified controlling questions of law in the negative and hold that the continuing tort theory and the aggravation rule are inapplicable.

*Limitation of Actions*

Compliance with the three-year statute of limitations of Section 56 is a condition precedent to recovery in a FELA action. *See Emmons v. So. Pac. Transp. Co.*, 701 F.2d 1112, 1117 (5th Cir. 1983). FELA does not define when an action accrues for purposes of recovery under the Act. *See* 45 U.S.C.A. §§ 51-60. We begin our analysis with a survey of opinions which address or

---

question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(d)(West Supp. 2014).

reference the accrual of actions under FELA and other federal statutes in relation to limitation of actions. 45 U.S.C.A. § 56.

### Federal Court Opinions Where Suits Were Time Barred

### U.S. v. Kubrick
### 444 U.S. 111, 123-25, 100 S.Ct. 352, 360-61, 62 L.Ed.2d 259 (1979)

In this non-FELA medical malpractice case brought under the Federal Tort Claims Act, the Supreme Court determined that Kubrick's claim accrued under that Act when Kubrick, armed with knowledge of the facts about the harm done to him, could have protected himself by seeking advice in the medical and legal communities, but it did not appear that he had done so. *Id.* Observing that a putative medical malpractice plaintiff must determine within the applicable two-year limitations period whether to file suit, the court also noted that where such plaintiff "fails to bring suit because he is incompetently or mistakenly told that he does not have a case, [there is] no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury." *Id*. at 123-24, 100 S.Ct. at 360. The court explained that if it had misconceived congressional intent, Congress may exercise its prerogative to achieve its intended result through amendment of the statute at issue. *Id*. at 125, 100 S.Ct. at 361.

### Crisman v. Odeco
### 932 F.2d 413, 414 (5th Cir. 1991)

William Crisman brought suit under the Jones Act alleging he suffered hearing loss, chemical toxicity disorder, and respiratory injuries. *See* 46 U.S.C.A. § 30104. Crisman, who had been hired by the defendant in 1970, admitted in his deposition that he knew at the time of his

exposure that paint and solvent fumes had caused his problems and he complained to supervisors and co-workers by 1978 or 1979. His symptoms only occurred at work and disappeared when he was away from work for extended periods, but by the early 1980's, he was experiencing problems almost every time he went to work. *Crisman*, 932 F.2d at 414, 416. His physician informed him in 1979 that workplace toxins might be the cause of his problems. *Id*.

The Fifth Circuit Court of Appeals observed that the occurrence of an event that should put a plaintiff on notice to check for injury is sufficient to commence the running of the prescriptive period, even if the event results in only minor physical effects. *Id*. The court affirmed the dismissal of Crisman's suit as time-barred upon determining that Crisman had actual knowledge of all his injuries more than three years before he brought his case and knew or should have known that those symptoms were caused by his work. *Id*. at 414-16. Quoting its prior opinion in *Dubose v. Kansas City S. Ry.*, 729 F.2d 1026, 1029, 1030 (5th Cir. 1984), the court noted, "Once a plaintiff possesses critical facts, . . . legal and medical professionals are available to give advice to an injured person concerning whether he has been legally wronged[,]" and "[once] a plaintiff should reasonably have been aware of the critical facts of injury and causation," suit must be brought. *Crisman*, 932 F.2d at 417.

The court also considered Crisman's alternative theory that the continuing nature of his employer's acts required application of the continuing tort theory to permit the period of limitations to run from the time he last worked with the toxic chemicals. *Id*. The court recalled its opinion in *Emmons* in which it rejected the continuing tort theory where the employer had no knowledge of the employee's condition. *Id*.; *Emmons v. So. Pac. Transp. Co.*, 701 F.2d 1112, 1117 (5th Cir. 1983). As Emmons had never applied for a transfer to a different job and had failed

7

to inform any Southern Pacific official that his ankle problem was caused by his work until just before he was fired, the Fifth Circuit Court of Appeals held that there could be no continuing tort without such knowledge on the part of Southern Pacific. *Crisman*, 932 F.2d at 417; *Emmons,* 701 F.2d at 1121. Because Crisman never alleged that he had requested to be transferred to another job and never suggested that his employer knew of his purported physical problems, which are the important factors necessary for the invocation of the continuing tort theory, the court concluded Crisman was precluded from utilizing that theory. *Crisman*, 932 F.2d at 417; *Emmons,* 701 F.2d at 1121. In footnote 5 of its opinion, the *Crisman* court rejected Crisman's claim for aggravation of time-barred injuries because the employer did not commit a new separate tort but merely continued Crisman's job assignment. *Crisman*, 932 F.2d at 417.

### *Albertson v. T. J. Stevenson & Co.*
### 749 F.2d 223, 227-28 (5th Cir. 1984)

Albertson had suffered from headaches, sought medical treatment over the course of ten years as his symptoms worsened, and eventually filed suit under the Jones Act twelve years after his exposure to the toxic chemicals with which he worked.[5] *See* 46 U.S.C.A. § 30104 (previously 46 U.S.C.A. app. § 688). The Fifth Circuit held Albertson was duty-bound to evaluate his symptoms to determine whether they had become more serious. *Id*. at 232. The court observed that, "[i]f the plaintiff later discovers that his injuries are more serious than originally thought, his cause of action nevertheless accrues on the earlier date, the date he realized that he had sustained harm from the tortious act[,]" and:

> Application of the time of event rule, rather than the discovery rule, reflects the collective legislative and judicial judgment that a plaintiff possessing knowledge of the critical facts of his injury and its cause has the duty to comply with the applicable statute of limitations and make the defendant aware that he will pursue a

---

[5] The Jones Act adopts the same three-year statute of limitations applicable to FELA suits. 46 U.S.C.A. § 30104.

claim against it.   A plaintiff armed with these facts cannot argue persuasively that the time of event rule offends notions of fair play and substantial justice, even though he is unaware of all of the facts related to his inquiry or its cause.

*Albertson*, 749 F.2d at 228-29, 232.

### *Federal Court Opinions Where Suits Were Not Time Barred*

### *Urie v. Thompson*
### 337 U.S. 163, 168-71, 69 S.Ct. 1018, 1024-25, 93 L.Ed. 1282 (1949)

The United States Supreme Court determined that Urie's FELA action was not time-barred where the record showed that Urie had been exposed to silica dust since 1910, became too ill to work in May 1940, was diagnosed with silicosis in the following weeks, and filed suit in November 1941.   Assuming that Congress intended to include occupational diseases within the scope of FELA actions, the court determined that "mechanical analysis of the 'accrual' of petitioner's injury – whether breath by breath, or at one unrecorded moment in the progress of the disease – can only serve to thwart the congressional purpose."   *Urie*, 337 U.S. at 169, 69 S.Ct. at 1024.   Observing that "the humane legislative plan" did not intend the FELA statute of limitations to attach to "blameless ignorance," the court applied to its construction of the FELA limitations provision language adopted from a California worker's compensation case:

> It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves[.]

45 U.S.C.A. § 56; *Urie*, 337 U.S. at 170, 69 S.Ct. at 1025.   The court concluded Urie's action was not barred by the FELA statute of limitations.   *Id.*

### *Pretus v. Diamond Offshore Drilling, Inc.*
### 571 F.3d 478, 482 (5th Cir. 2009)

9

Pretus commenced his employment in 1978, and in 2000 began suffering cold-like symptoms which tended to improve when he left his workplace on submersible drilling rigs. *Id.* at 479. His employer directed that any employee with respiratory problems was to take antibiotics and antihistamines, and offered flu and pneumonia injections to employees upon request. *Id.* Pretus took the medications which typically alleviated his symptoms. *Id.* Pretus was diagnosed and treated for bronchitis on one occasion, but when his symptoms continued to worsen, he took a leave of absence from work in July 2004, and was treated by a pulmonologist. *Id.* at 479-80. In January 2005, another physician informed Pretus that he may be suffering from a fungal infection in his lungs, and in March 2005, his employer's insurance company referred Pretus for an independent medical examination. *Id.* at 480. Pretus was thereafter diagnosed with hypersensitivity pneumonia and, when the condition is treated in the early stage of the disease, a complete cure may be had but, as in Pretus' case, when the condition is not recognized, it worsens and progresses to fibrosis of the lungs rendering the condition fixed with irreversible loss of lung function. *Id.* at 480. The condition is often not diagnosed, and the independent physician noted that the employer's "standing orders" to dispense medication for respiratory infections likely prevented diagnosis, delayed recognition of the condition, and contributed to Pretus' illness. *Id.* Pretus sued his employer on September 6, 2006, under the Jones Act. *Id.* The district court granted partial summary judgment on the basis that Pretus' suit was time-barred. *Id.*

The Fifth Circuit observed that cases continue to distinguish between pure latent injury cases and the traumatic event/latent manifestation cases which are dependent on the facts of the particular case.[6] *Pretus,* 571 F.3d at 483. The cases on which it relied focused on three

---

[6] The Fifth Circuit recounted the time-of-event rule for non-latent injuries in which a plaintiff's cause of action is deemed to accrue if some injury is discernable when the tortious act occurs, and contrasted the use of the discovery

10

considerations: (1) the severity of the traumatic event and initial symptoms; (2) the plaintiff's correlation of his ultimate injury with the traumatic event; and (3) the plaintiff's reasonable reliance on the opinions of medical experts. *Id.* at 484.

The court determined that a genuine issue of material fact existed regarding the existence of a traumatic event and the severity of Pretus' symptoms prior to 2004 because a fact finder could classify Pretus' initial symptoms as routine physical annoyances under the first consideration, and could also conclude that it did not matter that Pretus could correlate those initial symptoms to his workplace because they were short-term afflictions that disappear with treatment, and behaved in that way until 2004. *Id.* at 485. As to the third consideration, the court observed that Pretus diligently sought care "both while he was suffering from minor symptoms in 1999 and 2000, and a few years later when he developed a more serious pulmonary disability." *Id.* at 485. Pretus' initial diagnosis did not indicate to his physicians that he had a serious disease until 2004 when the treatments for his cold, sinus infection, and bronchitis failed to improve his symptoms as they became more severe and debilitating. *Id.* at 485-86. Thereafter, Pretus' physicians determined that he was afflicted with chronic interstitial lung inflammation, permanent fibrosis of his lung tissue, and hypersensitivity pneumonia, which are entirely different from bronchitis and often misdiagnosed during early stages. *Id.* at 486. Those diagnoses were obtained less than three years before Pretus filed suit. *Id.* The Fifth Circuit concluded that a reasonable person could conclude that Pretus' cause of action did not accrue until after September 6, 2003. *Id.*

---

rule for pure latent injuries in which the cause of action does not accrue on the date the tortious act occurs but on the date the plaintiff discovers or reasonably should have discovered both the injury and its cause as opposed to "the traumatic event/latent manifestation case" in which a plaintiff realizes at the time of the traumatic event that he is injured and the responsible cause but the full extent of his harm has not become manifest. *See Pretus,* 571 F.3d at 482, *quoting and citing Albertson*, 749 F.2d at 228-29.

11

### *Taurel v. Central Gulf Lines, Inc.*
### 947 F.2d 769, 770-72 (5th Cir. 1991)

Taurel had worked as a merchant seaman since 1958. He had complained of pulmonary and respiratory difficulties throughout his career, had visited hospitals in 1963 and 1965 regarding his symptoms, underwent routine chest x-rays from 1975 to 1981 which were declared normal, was treated for bronchitis in 1984 without any other diagnosis, but was diagnosed with asbestosis in 1987 after a routine screening test. The district court granted summary judgment in favor of Central Gulf after determining that Taurel's 1988 suit was untimely. *Taurel*, 947 F.2d at 771. The Fifth Circuit disagreed, holding that Taurel's action under the Jones Act did not accrue until a physician actually diagnosed him with asbestosis. *Id.* at 771. The court concluded that a genuine issue of material fact existed regarding when Taurel discovered or should have discovered that he had asbestosis. *Id.* at 771.

### *State Court Opinions*

### *Billman v. Mo. Pac. R. Co.*
### 825 S.W.2d 525, 527-28 (Tex.App. –Fort Worth 1992, writ denied)

In *Billman*, a case which the Texas Supreme Court declined to review, the Fort Worth Court of Appeals determined that the limitations period for Billman's job-related hearing loss barred his action because Billman knew of the injury more than three years before he filed suit. However, the court determined that summary judgment was not proper in part because a genuine issue of material fact remained regarding whether Billman, who had filed suit on March 26, 1990, had an actionable claim for aggravation of his original hearing loss accruing after March 26, 1987, as asserted in his affidavit. *Billman*, 825 S.W.2d at 526. To recover for aggravation of the time-barred hearing loss, Billman was required to plead and prove that he suffered additional

injury to his hearing, that his employer's negligence had caused the additional injury, and that both his additional injury and its cause occurred within the three-year period before suit was filed. *Id*. at 528-29. The employer had not challenged Billman's claim that it had continued to negligently subject Billman to noise which injured his hearing, but instead had only argued that a claim for aggravation is not cognizable under FELA. *Id*. at 529. Because the court recognized that the Texas standard for review of summary judgment proof is more stringent than the federal standard, and because the record did not contain conclusive proof that there was no new tort within three years of filing suit as in *Crisman*, the court followed *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 361 (3rd Cir. 1986). *Kichline* held the statute of limitations did not bar Kichline's claim for aggravation of his pulmonary disease which had occurred during the three-year period before he filed suit and ending with his retirement. *Kichline*, 800 F.2d at 361. Recognizing that apportionment of the injuries would be difficult, the court determined that Kichline's awareness of the effects of his work-related exposure to diesel fumes would go to the issue of his contributory negligence. *Kichline*, 800 F.2d at 361. In a footnote, the *Billman* court observed that if Billman had by deposition or affidavit denied that he associated his hearing loss with loud noises at work, that testimony would constitute evidence raising a fact issue precluding summary judgment. *Billman*, 825 S.W.2d at 528 n. 3.

### *BNSF R. Co. v. Phillips*, 434 S.W.3d 675, 681 (Tex.App. –Fort Worth 2014, pet. filed)

Here, the appellate court considered whether the evidence was legally sufficient to establish that Phillips' claims accrued no earlier than April 13, 2004. Phillips began his employment with BNSF's predecessor in 1974. *Id.* at 682-84. In April 1998, Phillips informed his chiropractor that he was experiencing spinal soreness and tenderness, he had seen other doctors

regarding his symptoms, and the condition had not progressively worsened.  *Id.* at 684.  Phillips attributed aggravation of his condition to rough-riding railroads but did not attribute his condition to his employment, and he had not missed work because of his condition.  *Id*. at 684.  Phillips acknowledged suffering from past low back pain, and other symptoms in his neck, hands, legs, and feet, including cramps or backache.  His chiropractor noted that Phillips had been suffering from chronic back pain for years and was in constant pain when awake.  *Id.* at 684.  Medical imaging in 2003 indicated that Phillips suffered from spondylolysis, minor bulging, and intravertebral hemangiomas.  *Id.* at 684.  In June 2004, Phillips complained of additional symptoms including chronic back spasms, tingling in his fingertips, and sensation of cold in his left foot.  This was not attributed to his working conditions but was attributed instead to diabetes.  *Id.* at 684.  In 2005, Phillips resigned after he was referred to a neurologist who informed him that he could no longer work due to the deterioration of his spinal health.  *Id.* at 682, 684.

In his suit filed April 13, 2007, Phillips brought claims under FELA in which he complained of injuries to his back, neck, legs, shoulders, arms, and other body parts caused by jolts, shocks, vibrations, and cumulative trauma arising from his exposure to defective equipment, including long-term exposure to vibratory forces, rough-riding locomotives, and poorly-maintained equipment.  *Id.* at 682.  Stating that he first understood that his spinal condition was related to his work prior to 2005, Phillips testified that he did not know about "whole-body vibration" in 1998 or 1999 or in the early 2000s and his employer had not informed him about any literature on the subject.  He and his family had always gone to a chiropractor on an as-needed basis, and the chiropractic treatments helped his symptoms.  *Id.* at 684-85.  Relying on its footnote in *Billman*, the court found there was some evidence that Phillips reasonably did not

14

realize that his job had caused his debilitating injuries until on or after April 13, 2004, which supported the jury's finding that Phillips' FELA action was timely filed within three years from the day his cause of action accrued and was not time-barred. *Id.* at 682.

### *Comparison of the Facts*

In his deposition, Acosta acknowledged that his 2005 platform fall caused the injuries to his low back, left hip, and left calf, and are the same injuries that form the basis of his FELA suit. He admittedly injured his low back while working in 1993 or 1994. Because he should reasonably have been aware of the critical facts of his work-related injury and causation, and because the record shows that he was aware that he had suffered work-related injuries more than three years before he filed his FELA suit, Acosta failed to meet his burden of establishing that his suit is timely. 45 U.S.C.A. § 56; *see Urie*, 337 U.S. at 170, 69 S.Ct. at 1025; *Phillips*, 434 S.W.3d at 682. Absent applicability of the continuing tort doctrine or the aggravation rule, the trial court's denial of BNSF's motion for summary judgment was erroneous.

### *The Continuing Tort Doctrine*

Under the continuing tort doctrine, "'the cause of action is not complete and does not accrue until the tortious acts have ceased.'" *See In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 646 F.3d 185, 191 (5th Cir. 2011)(rejecting application of continuing tort doctrine to claims asserted under the Federal Tort Claims Act, which bases accrual of action on awareness of injury), *quoting Gen. Universal Sys., Inc. v. HAL, Inc.,* 500 F.3d 444, 451 (5th Cir. 2007); *see also Lavellee v. Listi,* 611 F.2d 1129, 1132 (5th Cir. 1980)(claim for a "continuing tort" does not accrue until the tort has ceased). In resolving the first controlling question regarding the applicability of the continuous tort doctrine, we consider whether BNSF knew of Acosta's physical problems and

15

whether Acosta requested to be transferred to another job. *See Crisman*, 932 F.2d at 417; *Emmons,* 701 F.2d at 1121.

During his deposition, Acosta testified that he had made injury incident reports after he was hit by a chip from an angle bar that struck his face, again after another employee struck him in the nose with a hook, and 15 or 20 years earlier after he tripped over a rail and hit his left leg. At an unspecified time, he informed his foreman that he had injured his elbow when working in Clovis, New Mexico. He had also informed his roadmaster, Melvin Thomas, that he had injured his back while using a hook to move metal plates in 1993 or 1994 in "the Colorado Division," and notified Thomas that he was going to see a doctor. Acosta did not make injury incident reports to BNSF regarding his 1993 or 1994 and 2005 injuries.

There is no evidence that Acosta's 2005 injury was known to anyone other than Acosta and the mechanic who assisted him, and Acosta admitted that he did not know whether any supervisor ever learned of his fall. After he fell through the car platform in 2005, Acosta never suffered another incident of injury while working at BNSF. Although there is some evidence that he had notified BNSF regarding some of his injuries, neither party directs us to any evidence showing that Acosta ever requested to be transferred to another job, and we have found none in the record. We conclude the continuing tort theory is not applicable to these facts and does not toll the three-year FELA statute of limitations. *See Crisman*, 932 F.2d at 417; *Emmons,* 701 F.2d at 1121.

### *The Aggravation Rule*

We similarly resolve the second controlling question in the negative and conclude the aggravation rule does not apply to these facts. First, Acosta did not plead or prove the aggravation rule applies, as he did not plead that he suffered additional injury and that BNSF's

negligence caused the additional injury. *Billman*, 825 S.W.2d at 528-29. Had this sub-issue not been identified by the trial court as a controlling issue, it would not have been preserved for our consideration. Because it is presented as a controlling question, we determine that Acosta has not shown the aggravation rule to be applicable. During his deposition, Acosta testified to his belief that BNSF was responsible for his injuries but expressly admitted that he did not experience any new injuries while working for BNSF after his 2005 hole-in-the-platform fall or before March 21, 2010, when he was last "on the job" at BNSF. He also testified he had not been injured outside of his employment, except when he was struck in the head with a crowbar in 1969, an event which fractured Acosta's skull. The record allows us to assert with confidence that BNSF did not commit a new separate tort within three years of Acosta filing suit but merely continued Acosta's job assignment. *See Crisman*, 932 F.2d at 417; *compare Billman*, 825 S.W.2d at 528.

We sustain Issue One. We reverse the trial court's order denying summary judgment, render judgment granting summary judgment in favor of BNSF, and dismiss the case.


                                          ANN CRAWFORD McCLURE, Chief Justice
November 7, 2014

Before McClure, C.J., Rodriguez, J., and Parks, Judge
Parks, Judge, sitting by assignment

17