FILED
14-0530
4/3/2015 3:44:04 PM
tex-4761027
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# NO. 14-0530

## IN THE SUPREME COURT OF TEXAS

**BNSF RAILWAY COMPANY,**

**Petitioner,**

**v.**

**JAMES E. PHILLIPS,**

**Respondent.**

**On Petition for Review
from the Second Court of Appeals, Fort Worth, Texas
No. 02-11-00250-CV**

## REPLY BRIEF ON THE MERITS

David E. Keltner
State Bar No. 11249500
david.keltner@kellyhart.com
Marianne M. Auld
State Bar No. 01429910
marianne.auld@kellyhart.com
Jody S. Sanders
State Bar No. 24051287
jody.sanders@kellyhart.com
Mary H. Smith
State Bar No. 24075093
mary.smith@kellyhart.com
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Telephone:  817.332.2500
Telecopier:  817.878.9280

**ATTORNEYS FOR PETITIONER**

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES..................................................................................... iii

INTRODUCTION ...............................................................................................1

REPLY ...............................................................................................................1

I.    Phillips Presented No Evidence of Causation .................................................1

    A.    Johanning's Testimony Constitutes No Evidence
of Causation..................................................................................3

    B.    Kress's Testimony Constitutes No Evidence of Causation ..................6

    C.    Phillips's Attempt to Distinguish This Court's Precedent
Reflects a Fundamental Misunderstanding of Those Opinions ............7

    D.    Phillips's Preemption Argument Rests Upon the Same
Misunderstanding ...............................................................................10

    E.    BNSF Properly Preserved Its Right to Challenge the Expert
Testimony on Causation......................................................................11

    F.    BNSF Has Neither "Concede[d] Causation" Nor "Concede[d]
Timeliness".........................................................................................13

II.    Phillips Presented No Evidence to Support the Jury's Finding
of Timeliness .........................................................................................13

    A.    The Burden to Prove Compliance with the FELA's
Timeliness Requirement Rested Squarely with Phillips.....................14

    B.    No Evidence Supports the Jury's Finding on Timeliness...................15

    C.    Phillips's Attempts to Distinguish BNSF's Cited Authorities
are Unavailing ..................................................................................20

# TABLE OF CONTENTS (cont.)

**Page**

III.   Phillips's General Complaints Cannot Support a Finding
of LIA Liability...............................................................................22

IV.   The Court of Appeals Erroneously Employed Inconsistent
Standards In Affirming Both the Jury's Finding of Negligence
and the Trial Court's Failure to Submit Contributory Negligence................25

V.   The Court of Appeals Erroneously Affirmed Evidentiary Rulings
That Rest Upon a Misapprehension of the Record, Destroyed BNSF's
Right to Cross-Examination, and Allowed Phillips's Evidence to Go
Unrebutted ......................................................................................27

PRAYER.........................................................................................30

CERTIFICATE OF COMPLIANCE...................................................32

CERTIFICATE OF SERVICE .........................................................32

# INDEX OF AUTHORITIES

**Cases:**                                                                          **Page**

*Abraham v. Union Pac. R.R. Co.*,
233 S.W.3d 13 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)..................7, 8

*Amoco Chems. Corp. v. Stafford*,
663 S.W.2d 147 (Tex. App.—Houston [1st Dist.] 1983, no writ) ..........................27

*Billman v. Mo. Pac. R.R. Co.*,
825 S.W.2d 525 (Tex. App.—Fort Worth 1992, writ denied).....................14, 15, 18

*Bishop v. A.B. Auto Salvage*,
No. 02-09-00314-CV, 2011 WL 5984527
(Tex. App.—Fort Worth Dec. 1, 2011, no pet.) (mem. op.)...................................12

*BNSF R.R. Co. v. Acosta*,
449 S.W.3d 885 (Tex. App.—El Paso 2014, no pet.)......................................20, 21

*Bostic v. Georgia-Pacific Corp.*,
439 S.W.3d 332 (Tex. 2014)..........................................................................2

*Caudill v. CSX Transp., Inc.*,
749 S.E.2d 342 (W. Va. 2013).............................................................................21

*Charter Oak Fire Ins. Co. v. Perez*,
446 S.W.2d 580 (Tex. Civ. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e).......29

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005)....................................................................9, 10, 18

*Clay v. Union Carbide Corp.*,
828 F.2d 1103 (5th Cir. 1987) ............................................................................19

*Coastal Tankships, U.S.A., Inc. v. Anderson*,
87 S.W.3d 591 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ......................8

**Cases:**                                                                                          **Page**

*Davidson v. Great Nat'l Life Ins. Co.*,
737 S.W.2d 312 (Tex. 1987)............................................................................27, 29

*Dowling v. NADW Mktg., Inc.*,
631 S.W.2d 726 (Tex. 1982)..................................................................................13

*Emmons v. S. Pac. Transp. Co.*,
701 F.2d 1112 (5th Cir. 1983) ..........................................................................14, 15

*Fashauer v. New Jersey Transit Rail Operations, Inc.*,
57 F.3d 1269 (3d Cir. 1995)....................................................................................26

*Faust v. BNSF Ry. Co.*,
337 S.W.3d 325 (Tex. App.—Fort Worth 2011, pet. denied) ...................................3

*Granfield v. CSX Transp., Inc.*,
597 F.3d 474 (1st Cir. 2010)....................................................................................14

*Hardy v. Union Pac. R.R. Co.*,
No. 10-CV-01880-REB-MJW, 2011 WL 5295199 (D. Colo. Nov. 2, 2011) ....... 6-7

*Harvey v. CSX Transp., Inc.*,
No. 92-1355, 23 F.3d 401 (4th Cir. May 5, 1994).................................................15

*Hines v. Consol. Rail Corp.*,
926 F.2d 262 (3d Cir. 1991)......................................................................................8

*Huckaby v. A.G. Perry & Son, Inc.*,
20 S.W.3d 194 (Tex. App.—Texarkana 2000, pet. denied) ...................................12

*In re GlobalSanteFe Corp.*,
275 S.W.3d 477 (Tex. 2008).................................................................................9, 11

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994).......................................................................................8

**Cases:** **Page**

*Inman v. Baltimore & Oh. R.R. Co.*,
361 U.S. 138 (1959)......................................................................................24

*Johnson v. Norfolk & W. Ry. Co.*,
No. 92-1719, 985 F.2d 553 (4th Cir. Jan. 28, 1993)................................15

*Keane v. Ne. Ill. Commuter R.R. Corp.*,
No. 01-C-43, 2002 WL 1806919 (N.D. Ill. 2002)....................................25

*Kelly v. Ill. Cent. R.R. Co.*,
No. 08-1052, 2010 WL 271959 (C.D. Ill. Jan. 12, 2010)...........................6

*Lajoie v. State*,
237 S.W.3d 345 (Tex. App.—Fort Worth 2007, no pet.) (mem. op.) .....................11

*Lozano v. Lozano*,
52 S.W.3d 141 (Tex. 2001)........................................................................18

*Marathon Oil Co. v. Lunsford*,
733 F.2d 1139 (5th Cir. 1984) ..................................................................19

*Maritime Overseas Corp. v. Ellis*,
971 S.W.2d 402 (Tex. 1998).................................................................9, 10

*Merck & Co. v. Garza*,
347 S.W.3d 256 (Tex. 2011)......................................................... 2-4, 10

*Merrell Dow Pharms., Inc. v. Havner*,
953 S.W.2d 706 (Tex. 1997)........................................................... 2-4, 8

*Mo. Pac. R.R. Co. v. Navarro*,
90 S.W.3d 747 (Tex. App.—San Antonio 2002, no pet.)...........................8

*Munns v. CSX Transp., Inc.*,
579 F. Supp. 2d 924 (N.D. Ohio 2008)....................................................23

**Cases:** **Page**

*N-S-W Corp. v. Snell*,
561 S.W.2d 798 (Tex. 1977) (orig. proceeding)......................................................12

*Norfolk S. Ry. Co. v. Sorrell*,
549 U.S. 158 (2007)..................................................................................................25

*O'Neill v. BNSF Ry. Co.*,
No. A10-1987, 2011 WL 4008276 (Minn. Ct. App. Sept. 12, 2011)................ 23-25

*Otis Spunkmeyer, Inc. v. Blakely*,
30 S.W.3d 678 (Tex. App.—Dallas 2000, no pet.) .................................................28

*Pretus v. Diamond Offshore Drilling, Inc.*,
571 F.3d 478 (5th Cir. 2009) ...................................................................................19

*Roberts v. Lain*,
32 S.W.3d 264 (Tex. App.—San Antonio 2000, no pet.).........................................14

*Robinson v. BNSF Ry. Co.*,
553 F. App'x 792 (10th Cir. 2014) ..........................................................................14

*Sloas v. CSX Transp., Inc.*,
616 F.3d 380 (4th Cir. 2010) ...................................................................................26

*Strickland v. Norfolk S. Ry. Co.*,
692 F.3d 1151 (11th Cir. 2012) ..........................................................................23, 24

*Synar v. Union Pac. R.R. Co.*,
No. 12-99-00428-CV, 2001 WL 1263573
(Tex. App.—Tyler Oct. 17, 2001, pet. denied)....................................................6, 24

*T.O. Stanley Boot Co. v. Bank of El Paso*,
847 S.W.2d 218 (Tex. 1992).....................................................................................12

# INDEX OF AUTHORITIES (cont.)

**Cases:**                                                                     **Page**

*Tezak v. BNSF R.R. Co.*,
No. C09-05212BHS, 2010 WL 3211693 (W.D. Wash. Aug. 12, 2010) ................24

*Trenholm v. Ratcliff*,
646 S.W.2d 927 (Tex. 1983) ................................................................................13

*United States v. Kubrick*,
444 U.S. 111 (1979) .............................................................................................15

*Urie v. Thompson*,
337 U.S. 163 (1949) .......................................................................................14, 22

*Wilson v. Burlington N., Inc.*,
670 F.2d 780 (8th Cir. 1982) ...............................................................................26

*Whirlpool Corp. v. Camacho*,
298 S.W.3d 631 (Tex. 2009)..............................................................................4, 10

*Young v. Clinchfield R.R. Co.*,
288 F.2d 499 (4th Cir. 1961) ...............................................................................14

**Rules and Statutes:**

45 U.S.C. § 56 .....................................................................................................13

Tex. R. Civ. P. 278 ..............................................................................................26

## INTRODUCTION

The Majority largely ignores this Court's insistence that expert testimony be reliable. The Dissent points out the Majority's crucial omission, and two justices who were not on the panel would have granted rehearing on that basis. Phillips's Response takes the issue even further—suggesting, without any supporting authority, that the Court (1) retreat from its unambiguous prior rulings that clearly and consistently apply expert reliability standards in all cases involving expert evidence and (2) refuse to apply those standards in cases involving federal causes of action. The Court already has rejected this suggestion in the context of another federal act, and it is of great importance to the jurisprudence of this state that the Court reaffirm its conclusion in the FELA context. Doing so will confirm this Court's agreement with the overwhelming majority of courts in this state and throughout the United States that have ruled specifically on this issue.

## REPLY

### I.     Phillips Presented No Evidence of Causation.

This Court recently reaffirmed the reliability standard for epidemiological studies used to prove causation: to be legally sufficient causation evidence, epidemiological studies must show a statistically-significant doubling of the risk at

a 95% confidence interval.[1] *See Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332 (Tex. 2014); *Merck & Co. v. Garza*, 347 S.W.3d 256, 262 (Tex. 2011); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711-12 (Tex. 1997). The application of that standard to Phillips's case is fatal because Phillips has conceded that his only evidence of general causation consists of studies allegedly showing a link between vibration and spinal injuries that appear nowhere in the appellate record. [Appellee Br. at 6; 4 RR 34-35, 37-42, 57, 65-69, 119-24; 5 RR 25-29, 49-50; 6 RR 28-31]. In the absence of those studies, no court can evaluate their reliability, and his experts' opinions based upon those studies are no evidence.[2] *See Havner*, 953 S.W.2d at 714 ("If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable.").

Rather than responding to BNSF's argument that his evidence does not satisfy this Court's clearly articulated reliability standards, Phillips avoids the issue entirely—mischaracterizing the Court's holdings in an attempt to support his baseless claim that those opinions do not apply in FELA cases, conflating the

---

[1] This standard is only the bare minimum requirement; "[t]here are many other factors to consider in evaluating the reliability of a scientific study." *Havner*, 953 S.W.2d at 724.

[2] In addition to the epidemiological studies, Phillips's expert, Dr. Eckardt Johanning, professed to rely upon his own studies and "governmental and professional standards demonstrating [whole body vibration] causation." [4 RR 34-42, 57, 62-65, 67, 76-82, 91-92, 119-24; 5 RR 26-28, 49-50]. Because those studies and standards are not in the record—and Johanning's testimony does not disclose their statistical significance or, in some cases, their basic conclusions—they cannot be evaluated for reliability. [4 RR 34-35, 57, 76-82, 91-92; 5 RR 26-28].

wholly distinct concepts of sufficiency and reliability, and ignoring more than two dozen cases BNSF cited that uniformly reject Phillips's position. Because Phillips failed to present legally sufficient causation evidence, and the court of appeals' inexplicable decision to affirm the jury's causation finding conflicts with *Havner*, *Garza*, and *Bostic*, this Court should reverse and render judgment for BNSF.

### A.     Johanning's Testimony Constitutes No Evidence of Causation.

Phillips was required to show both general and specific causation—that exposure to vibration *could* cause his injuries and that exposure to vibration *did* cause his injuries. Johanning's testimony failed to prove either. *Faust v. BNSF Ry. Co.*, 337 S.W.3d 325, 333 (Tex. App.—Fort Worth 2011, pet. denied).

Johanning's testimony is no evidence of general causation because Phillips failed to prove that the epidemiological evidence underlying Johanning's opinions satisfies the reliability standards pronounced by this Court. Texas law requires that an epidemiological study used to prove causation must show a doubling of the risk at a statistically significant confidence level. *Garza*, 347 S.W.3d at 265-66; *Havner*, 953 S.W.2d at 718-20. However, the record in this case contains neither the studies that form the basis for Johanning's opinions nor testimony concerning their statistical significance. Because the Court cannot evaluate the reliability of Johanning's general causation testimony in the absence of such information, these omissions are fatal.

Phillips attempts to sidestep his lack of proof by arguing that nothing required him to introduce the studies into evidence. [Resp. Br. at 28-29]. Phillips misses the point. The question is whether Phillips demonstrated the studies' reliability anywhere in the *record*—not whether the studies should have been admitted as evidence during trial. Phillips also cannot escape his predicament by noting that BNSF failed to introduce the studies to disprove reliability. [Resp. Br. at 28]. This Court already has rejected such an argument on the grounds that it impermissibly shifts the burden of proof. *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 639 (Tex. 2009) ("Evaluating whether expert testimony has been conclusively disproved by the opposing party is not the same as considering whether the proponent of the testimony satisfied its burden to prove the testimony is relevant and reliable.").

Phillips's argument that he did not need to present epidemiological evidence to prove his claim also does not excuse his failure to comply with *Havner*, *Garza*, and *Bostic*. [Resp. Br. at 14-15]. Phillips—who *chose* to rely upon epidemiological evidence to establish general causation—must comply with this Court's dictates. *Garza*, 347 S.W.3d at 264-68 ("*Havner*'s requirements necessarily apply to all epidemiological evidence."); *Havner*, 953 S.W.2d at 720; [Dissent at 4-5]. Because he did not, Johanning's testimony, which is based upon those studies, is no evidence of general causation.

Johanning's testimony also is no evidence of specific causation. First, Johanning's own testing of a BNSF locomotive is no evidence that Phillips was exposed to unsafe levels of vibration because he neither discussed his test results nor offered them as evidence. [4 RR 52, 70-73, 126-33; 5 RR 4-5, 34-42]. The *only* evidence concerning Johanning's test results came from BNSF's expert, Dennis Mitchell, who introduced graphs showing that neither his nor Johanning's testing detected vibration levels that violate, or even approach, the "caution zones" articulated by the International Organization for Standardization and EU Vibration Directive. [15 RR Court Exs. Dennis Mitchell A-B].

Second, as Johanning admitted, there is no quantifiable dose or exposure level known to cause injury or produce health effects. [BNSF Br. at 14-16]. Phillips argues that such data is unknown in several fields of study, including audiology and smoking. [Resp. Br. at 23-24]. However, given that Johanning's testimony regarding vibration exposure is informed by epidemiological studies and his own testing—neither of which is in the record—the lack of any quantifiable dose or exposure level that creates health effects or injury merely underscores the unreliability of his testimony. [BNSF Br. at 14-15].

Third, Johanning's differential etiology[3] failed to exclude other causes of Phillips's injury, and Phillips's claim to the contrary finds no support in the evidence. [BNSF Br. at 16-18]. As Johanning conceded, other issues could have played a role in Phillips's injury, including hypertension, diverticulitis, diabetes, obesity, a preexisting spinal slippage, and genetics. [5 RR 24, 52]. Yet, Johanning offered no explanation for his *ipse dixit* exclusion of these causes. For all of these reasons, Johanning's testimony is no evidence of causation.

**B.      Kress's Testimony Constitutes No Evidence of Causation.**

Dr. Tyler Kress's causation testimony also is legally insufficient to support the judgment. As a matter of law, an ergonomist, like Kress, cannot testify to specific causation. [*See* BNSF Br. at 18-19]. Phillips's Response completely ignores BNSF's cited authorities and cites cases for the more generic proposition that "[e]rgonomists . . . are routinely permitted to testify on causation." [Resp. Br. at 31]. This assertion does not answer the issue, as those cases do not hold that ergonomists may opine as to the medical cause of a particular injury. *See, e.g., Synar v. Union Pac. R.R. Co.*, No. 12-99-00428-CV, 2001 WL 1263573, at *6 (Tex. App.—Tyler Oct. 17, 2001, pet. denied); *Kelly v. Ill. Cent. R.R. Co.*, No. 08-1052, 2010 WL 271959, at *11 (C.D. Ill. Jan. 12, 2010) (same); *Hardy v. Union*

---

[3]   Although Phillips continues to refer to Johanning's approach as a "differential diagnosis," [Resp. Br. at 20-21, 30], Johanning actually conducted a less reliable "differential etiology." [BNSF Br. at 16-17].

*Pac. R.R. Co.*, No. 10-CV-01880-REB-MJW, 2011 WL 5295199, at *2-3 (D. Colo. Nov. 2, 2011) (same). Because the only testifying medical doctor did not establish specific causation, and Kress's testimony cannot fill that void, there is no evidence of specific causation.

With regard to general causation, Kress's testimony suffers from the same flaws as Johanning's—the studies that he cites are not in the record, and his methodology is unreliable. *See supra* at 3-6. Kress's familiarity with BNSF locomotives and Phillips's long career with the railroad do not excuse these deficiencies, and BNSF's cited cases—which Phillips makes no effort to address—compel the conclusion that Kress's testimony is no evidence of causation. [*See* BNSF Br. at 9-18, 19 n.9; Resp. Br. at 19-35].

### C. Phillips's Attempt to Distinguish This Court's Precedent Reflects a Fundamental Misunderstanding of Those Opinions.

"[T]he standard of causation under FELA and the standards of admission of expert testimony under the rules of evidence are distinct issues and do not affect each other."[4] *Abraham v. Union Pac. R.R. Co.*, 233 S.W.3d 13, 19 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (expressly rejecting contrary holding in

---

[4] To this end, BNSF does not, as Phillips claims, "assert that the substantive issue of causation is governed by state law[.]" [Resp. Br. at 10]. Rather, BNSF argues that Phillips's only evidence of causation fails to satisfy the reliability standards this Court pronounced in *Havner*, *Garza*, and *Bostic* and, therefore, constitutes no evidence as a matter of law.

---

*Hines v. Consol. Rail Corp.*, 926 F.2d 262 (3d Cir. 1991)).[5] Contrary to Phillips's position, "[t]he lower burden under FELA does not mean that, in FELA cases, courts must permit expert testimony that would not be admissible in other contexts." *Id.* "Where the trial court has admitted the expert testimony and the appellant challenges, on appeal, the expert testimony as constituting 'no evidence,' [an appellate court must] consider whether the expert testimony is reliable under a *de novo* standard of review." *Mo. Pac. R.R. Co. v. Navarro*, 90 S.W.3d 747, 750 (Tex. App.—San Antonio 2002, no pet.) (citing *Havner*, 953 S.W.2d at 710-20). "If the expert testimony is unreliable under *Havner* and *Robinson*, it is no evidence, 'not even a feather's weight.'" *Abraham*, 233 S.W.3d at 19-20 (citing *Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 610 (Tex. App.— Houston [1st Dist.] 2002, pet. denied)).

Phillips, whose Response continually and erroneously refers to this Court's *reliability* standard as a "state law *causation* standard" [Resp. Br. at xv, xviii, 4 (emphasis added)], asserts that the FELA's causation standard reduces his burden to present legally-sufficient causation evidence.[6] This Court—consistent with the

---

[5] *Hines*, the only case Phillips cites that arguably supports his position, predates *Daubert*, and neither Texas courts nor the Third Circuit follows its holding. *See Abraham*, 233 S.W.3d at 18-19 (rejecting *Hines* and collecting cases); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994) (holding that *Daubert* and Rule 702 standards determine reliability of expert evidence in FELA cases).

[6] Certainly where, as here, a plaintiff chooses to use as his only evidence of causation epidemiological studies that cannot be shown to meet the required reliability standard, the

---

overwhelming majority of Texas, federal, and other state courts that have considered the issue—has specifically rejected attempts to conflate federal substantive standards of causation with state procedural standards of evidentiary reliability.[7]    [Reply in Support of PFR at 4-5, App. H]; *see, e.g., In re GlobalSanteFe Corp.*, 275 S.W.3d 477, 486-87 (Tex. 2008) ("To the extent that Jones Act jurisprudence recognizes a special standard for proving causation, federal cases have held that this causation standard does not exempt Jones Act cases from the general rules for admission of expert testimony.").[8]

As Phillips concedes, Texas law supplies the appropriate appellate standards of review for determining legal sufficiency and mandates the application of the legal sufficiency standards articulated in *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005).  [*See* Resp. Br. at 12-14].  Phillips's reliance on *City of Keller* is curious, however, as that opinion squarely supports BNSF's position:

---

Court's reliability analysis drives the outcome of its legal sufficiency review.  That does not mean, however, that the reliability standard is the same as a "state law causation standard."

[7] Notably, the Majority also rejects this point, recognizing that, "even though Phillips's claims are pursuant to federal statutes, the trial court must follow state procedure in determining the reliability of expert testimony."  [Maj. Op. at 14-15].  Rather than accept this well-supported statement, Phillips calls BNSF "hypocritical" for arguing in a Minnesota case that state rules allowing recoveries that are not allowed under the FELA are preempted.  [*See* Resp. Br. at 10-11].  Phillips's misdirection is unavailing because (1) BNSF never has argued that "the substantive issue of [FELA] causation is governed by state law" and (2) BNSF's argument challenging another state's law that would expand FELA recoveries is not inconsistent with its reliance on this state's reliability and legal sufficiency review standards.  [*Id*. at 10].

[8] Because the Jones Act and the FELA have identical causation requirements, *In re GlobalSanteFe*'s analysis applies equally here.  *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998).

---

> It has long been the rule in Texas that incompetent evidence is legally insufficient to support a judgment[.] . . . This exception frequently applies to expert testimony . . . . After we adopted gate-keeping standards for expert testimony, evidence that failed to meet reliability standards was rendered not only inadmissible but incompetent as well.

*City of Keller*, 168 S.W.3d at 812-13; *see also Whirlpool Corp.*, 298 S.W.3d at 638 (courts evaluate legal sufficiency of expert testimony in light of entire record).[9]

Because federal claims, including Phillips's FELA claim, are subject to Texas's reliability requirements—which apply to *all* epidemiological evidence—Phillips's epidemiological studies are unreliable as a matter of law and constitute no evidence of causation.

### D. Phillips's Preemption Argument Rests Upon the Same Misunderstanding.

Phillips's preemption argument, made for the first time in his Response, misses BNSF's point entirely. The standard to which BNSF seeks to hold Phillips is not a "common-law causation standard" but rather the expert reliability standard that is used to determine whether a plaintiff presented legally sufficient evidence. *Garza*, 347 S.W.3d at 262. If Phillips presented no legally sufficient causation evidence, he cannot meet his FELA causation burden, no matter how low it may be. Moreover, this Court has rejected prior attempts to preempt state expert admissibility standards in the analogous Jones Act context, and Phillips offers no

---

[9] Phillips's cited cases that supposedly support a "relaxed" standard of review in FELA cases apply only in a *factual* sufficiency review—not a *legal* sufficiency review like this Court has been asked to perform. [Resp. Br. at 6-7]; *see, e.g.*, *Ellis*, 971 S.W.2d at 406.

meaningful reason to reach a different result here. *See In re GlobalSanteFe*, 275 S.W.3d at 487 ("We see no basis for holding that Texas law generally governing the admission of expert testimony . . . is preempted by the Jones Act."). Nothing in this Court's discussion of the reliability standard for epidemiological evidence prevents proper analysis of Phillips's FELA claim. *See supra* at 7-10.

**E.      BNSF Properly Preserved Its Right to Challenge the Expert Testimony on Causation.**

Phillips's waiver argument is baseless, as the court of appeals properly recognized.  [Maj. Op. at 14].  Indeed, BNSF objected to Phillips's causation evidence at every opportunity.  First, BNSF filed pretrial motions to preclude the testimony of Johanning and Kress, both of which the trial court denied.  [1 CR 75-85; 3 CR 485-88; 6 CR 1295].  Second, BNSF objected when each expert offered his testimony regarding causation.  [4 RR 64-65; 6 RR 25-26].  Third, BNSF obtained a running objection to Johanning's opinion testimony.[10]  [4 RR 66].  Finally, BNSF filed a Motion for JNOV, in which it argued that Johanning's and Kress's "testimony lacked a sufficient reliability to be considered sufficient

---

[10]   BNSF received an adverse ruling when the trial court granted BNSF's request for a running objection to Johanning's opinions.  [4 RR 66]; *see Lajoie v. State*, 237 S.W.3d 345, 351 (Tex. App.—Fort Worth 2007, no pet.) (mem. op.).

evidence of causation." [6 CR 1246-47].[11]  This is more than BNSF needed to do in order to preserve the point for appeal.

Phillips's argument that BNSF failed to obtain rulings on its motions is both irrelevant and incorrect.  It is irrelevant because BNSF only needed to object to legal sufficiency in its Motion for JNOV, which it did.  [6 CR 1246-47]; *see T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220-21 (Tex. 1992).  It is incorrect because the civil docket sheet clearly notes "Δ Mot to exclude Dr. Johanning denied" and "Δ M preclude testimony of Dr. Kress – denied"—a fact that Phillips fails to mention.[12]  [6 CR 1295]; *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 203-04 (Tex. App.—Texarkana 2000, pet. denied) (unlike motions in limine, pretrial motions to exclude evidence preserve error).

Although Phillips claims that BNSF's objections before the trial court were different than the objections described in its opening brief, he cites no authority requiring that a party use identical verbiage in the trial court and on appeal.  BNSF objected repeatedly that Phillips's causation evidence was unreliable and legally

---

[11]  Even if the Court finds that BNSF waived any objection to the reliability of Kress's testimony at trial, it is nonetheless true that legally insufficient evidence supports Kress's conclusion.  *See supra* at 6-7.

[12]  The docket sheet properly may be considered here because BNSF does not cite it to "contradict or prevail over a final judicial order," but rather to show that the trial court considered BNSF's motions and denied them.  *N-S-W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex. 1977) (orig. proceeding).  Because the record contains both the file-marked motions to exclude and the testimony of Johanning and Kress, the docket notation is not "the only evidence of [the] trial court's order or judgment."  [1 CR 75-85; 3 CR 485-88]; *Bishop v. A.B. Auto Salvage*, No. 02-09-00314-CV, 2011 WL 5984527, at *2 n.17 (Tex. App.—Fort Worth Dec. 1, 2011, no pet.) (mem. op.).

insufficient, which is all that Texas law requires. [Maj. Op. at 13-14 (recounting BNSF's preservation of issue); 1 CR 75-85; 3 CR 485-88; 6 CR 1246-47, 1295; 4 RR 64-66; 6 RR 25-26].

> ### F.      BNSF Has Neither "Concede[d] Causation" Nor "Concede[d] Timeliness."

Phillips suggests that BNSF "concedes causation" by arguing that Phillips's claim was untimely and, conversely, "concedes timeliness" by arguing that Phillips presented no evidence of causation. [Resp. Br. at 39, 50]. The questions are entirely separate, and BNSF may hold Phillips to his burden of proof on each element. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex. 1983) (citing *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 728 (Tex. 1982)) ("The brief does not concede the issue of reliance, but merely makes alternative arguments.").

## II.     Phillips Presented No Evidence to Support the Jury's Finding of Timeliness.

Phillips's lawsuit was untimely under the FELA, which requires a claimant to commence suit within three years from the day the cause of action accrued and to prove his timeliness as an element of his claim and condition precedent to recovery. 45 U.S.C. § 56. Because Phillips filed the underlying lawsuit on April 13, 2007, he had to prove that his FELA claim accrued on or after April 13, 2004. [1 CR 2-7]. Phillips did not satisfy this burden. Thus, this Court should reverse and render judgment for BNSF.

**A.    The Burden to Prove Compliance with the FELA's Timeliness Requirement Rested Squarely with Phillips.**

For the first time in this appeal, Phillips argues that it was *not* his burden—but, rather, BNSF's burden—to prove compliance with the FELA's timeliness requirement.   [Resp. Br. at 39-40].   This argument contradicts the trial court's charge to the jury, the Majority's Opinion, Phillips's prior briefing, and state and federal authority on this issue.   [6 CR 1225; 10 RR 4; Maj. Op. at 12]; *Billman v. Mo. Pac. R.R. Co.*, 825 S.W.2d 525, 527 (Tex. App.—Fort Worth 1992, writ denied) ("The burden is upon the claimant to allege and prove that he filed suit within the three-year period"); *Roberts v. Lain*, 32 S.W.3d 264, 268 (Tex. App.—San Antonio 2000, no pet.) (same); *Emmons v. S. Pac. Transp. Co.*, 701 F.2d 1112, 1118 (5th Cir. 1983) (same); *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 481 (1st Cir. 2010) (same); *Robinson v. BNSF Ry. Co.*, 553 F. App'x 792, 796 n.3 (10th Cir. 2014) (same).

Phillips claims that his argument finds support in a fifty-year-old opinion from the Fourth Circuit, but the opinion does not speak to the parties' burdens at all.  *Young v. Clinchfield R.R. Co.*, 288 F.2d 499, 503 (4th Cir. 1961).  Instead, it recites the uncontroversial point that a claim accrues "when [the plaintiff's] condition is diagnosed, unless it is shown that the plaintiff 'should have known' at an earlier date that he was injured."  *Id.* (citing *Urie v. Thompson*, 337 U.S. 163, 170 (1949)).  In no way does this statement suggest that a plaintiff is relieved of his

burden to prove timeliness whenever constructive knowledge is alleged. To the contrary, the Fourth Circuit has recognized that "the burden is . . . on [the FELA] claimant to allege and prove that his cause of action was commenced within the three-year period." *Johnson v. Norfolk & W. Ry. Co.*, No. 92-1719, 985 F.2d 553, at *1 (4th Cir. Jan. 28, 1993) (citing *Emmons*, 701 F.2d at 1118); *Harvey v. CSX Transp., Inc.*, No. 92-1355, 23 F.3d 401, at *2 (4th Cir. May 5, 1994) (citing *Emmons*, 701 F.2d at 1118). Because Phillips alone bore the burden to prove his compliance with the FELA's timeliness requirement, his argument that "[BNSF] failed to carry this burden" provides no basis for affirmance of the appellate court's judgment. [Resp. Br. at 39-40].

## B. No Evidence Supports the Jury's Finding on Timeliness.

An FELA cause of action accrues for timeliness purposes when a claimant discovers or possesses critical facts concerning both his injury and its underlying cause. *United States v. Kubrick*, 444 U.S. 111, 121-23 (1979); *Billman*, 825 S.W.2d at 527. In arguing that the evidence supports the jury's finding that Phillips's cause of action accrued on or after April 13, 2004, Phillips mischaracterizes the evidence, contradicts his own briefing, and ignores BNSF's arguments regarding alleged proof that constitutes no evidence as a matter of law.

As one example, Phillips claims "the evidence reflects [he] was not aware of his injuries or their cause until summer of 2005 at the earliest" and, in the next

breath, concedes that "a diagnosis of spondylolysis was made by a radiologist in 2003." [Resp. Br. at 42, n.25]. Phillips apparently reaches this inconsistent conclusion based on medical records from June 2004 that, according to Phillips, "do not make any mention of symptoms related to his spinal injury" and, therefore, prove that "Phillips was not experiencing spine and neck symptoms, other than back spasms, and the numbness in his extremities was diagnosed as related to diabetes, not his work for BNSF." [*Id.* at 42, 44]. This argument fails for at least two reasons.

First, Phillips seems to imply that the doctor's failure to mention symptoms relating to the spine means Phillips was not experiencing symptoms at that time. This implication is nonsensical as the records indicate that Phillips visited Dr. Cruz of the Kidney and Blood Pressure Clinic of Lubbock "for follow-up of hypertension"—not to discuss the spinal injury that *already had been diagnosed a year earlier*. The suggestion that Phillips was not experiencing spinal symptoms in 2004 also belies other record evidence, including Phillips's own testimony. [7 RR 11]. Second, as BNSF previously has explained, the 2004 doctor's notes constitute no evidence of timeliness because (a) Phillips admits he never was told that his spinal injuries were due to his diabetes and (b) evidence that Phillips received information *after* April 13, 2004 regarding another possible cause of his injury is irrelevant to whether he possessed critical facts concerning his injury and its work-

related cause *before* April 13, 2004. [BNSF Br. at 24-25]. Phillips makes no effort whatsoever to address these arguments in his Response.

Phillips also attempts to support his position with the "Confidential Patient Information" form he filled out for his chiropractor in 1998—the form that, as BNSF has explained, proves Phillips's awareness of the connection between his spinal symptoms and his work on locomotives. [BNSF Br. at 23]. Specifically, Phillips argues that (1) his negative answer to the question, "[i]s condition due to injury or illness arising out of patient's employment," establishes his ignorance of critical facts concerning the alleged cause of his injury in 1998 and (2) his statement that "rough riding railroad engines" aggravate his condition constitutes nothing more than "speculation," "mere suspicion or subjective belief that a causal connection exists between his exposure and his symptoms." [Resp. Br. at 43-44]. Neither argument survives scrutiny.

As to the former, it is unsurprising that Phillips did not attribute his back pain to an "injury" because Phillips *never* has claimed that his spinal condition was "the result of a traumatic incident, but rather an accumulation of repeated exposure to [whole body vibration] while operating a locomotive for 31 years." [*Id*. at 41, 44]. As to the latter, in a case involving alleged cumulative injury, discovery of the cause *always* will take the form of a subjective belief based on knowledge of critical facts because the law does not require a physician to confirm a plaintiff's

suspicions before his claim accrues. *Billman*, 825 S.W.2d at 527 ("[A]n awareness of critical facts will impose a duty upon a claimant to investigate and confirm or deny his belief, otherwise the limitations period would be meaningless."). Indeed, Phillips fails to articulate why his informed subjective belief in 2005 should be afforded any greater weight than his informed subjective belief in 1998. As Phillips conceded at trial, between 1998 and 2005, he did not experience any material change in his condition. [7 RR 11].

Next, Phillips relies on his own testimony that the "first time that [he] understood that [his] spinal condition was in fact caused by [his] work . . . was prior to - - to 2005, possibly, somewhere in there." [Resp. Br. 45]. According to Phillips, BNSF and Justice Meier claim that this testimony conclusively establishes Phillips's awareness of the alleged cause of his injury prior to 2004. That is a gross mischaracterization of BNSF's argument and the Dissenting Opinion. What BNSF has argued and Justice Meier properly recognized is that, under the equal inference rule, this particular testimony is *no evidence* of when his cause of action accrued. *City of Keller*, 168 S.W.3d at 813 ("When the circumstances are equally consistent with either of two facts, neither fact may be inferred."); *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001). Because the phrase "prior to – 2005" implicates the time period *before* April 13, 2004 as much as it implicates the time

period *after* April 13, 2004, this testimony no more establishes his compliance with the FELA timeliness requirement than disproves it.

Finally, Phillips's argument that he "only knew or should have known he had a spinal injury that was related to his work (as opposed to simple muscle soreness or spasms) sometime around 2005" ignores both the evidence and relevant authority. [Resp. Br. at 46]. Unlike the plaintiff in Phillips's cited case, Phillips's initial symptoms cannot fairly be characterized as "routine physical annoyances." *See Pretus v. Diamond Offshore Drilling, Inc.*, 571 F.3d 478, 485-86 (5th Cir. 2009) (plaintiff experienced "cold-type symptoms including a sore throat, fever, sinus pressure, coughing, and nose congestion").[13] Phillips's symptoms— which led him to seek consistent chiropractic treatment between 1998 and 2005 and obtain MRI imaging in 2003—included "low back pain," "neck pain or stiffness," "cramps or backache," and "pain down [the] left leg to the left foot." [15 RR Def.'s Ex. 11-12, 14]; *Clay v. Union Carbide Corp.*, 828 F.2d 1103, 1106-07 (5th Cir. 1987).

Ultimately, it does not matter if these symptoms put Phillips on constructive notice of his injury because Phillips concedes that he obtained *actual* knowledge of his injury in 2003 when a radiologist affirmatively diagnosed him with

---

[13] Phillips's other cited case is inapposite as it concerns a claim under the Longshoremen's and Harbor Workers' Compensation Act and applies a variation of the discovery rule that requires a plaintiff to have actual or constructive knowledge "that [his injury] interferes with his employment by impairing his capacity to work[.]" *Marathon Oil Co. v. Lunsford*, 733 F.2d 1139, 1142 (5th Cir. 1984).

spondylolysis—the same degenerative spinal condition at issue in this lawsuit. [Resp. Br. at 42, n.25]. This actual knowledge, combined with Phillips's possession of critical facts and a subjective belief concerning its cause, conclusively establish that his claim accrued prior to April 14, 2004. There simply is no evidence that Phillips satisfied his burden to prove otherwise.

### C. Phillips's Attempts to Distinguish BNSF's Cited Authorities are Unavailing.

In its opening brief, BNSF discussed two recent opinions with similar facts that support its position regarding timeliness. [BNSF Br. at 27-30]. Phillips's attempts to distinguish these opinions fall flat.

First, Phillips argues that *BNSF Railway Co. v. Acosta*, 449 S.W.3d 885 (Tex. App.—El Paso 2014, no pet.) does not support reversal of the appellate court's judgment because "the court of appeals distinguished the present case and in fact relied on the present case as providing the standard for determining timeliness." [Resp. Br. at 48]. In reality, the *Acosta* opinion begins "with a survey of opinions which address or reference the accrual of actions under FELA and other federal statutes in relation to limitation of actions"—including the Fort Worth Court of Appeals's opinion in this case—but the El Paso Court of Appeals does not explicitly compare, contrast, or apply the facts of those opinions to the case before it. *Acosta*, 449 S.W.3d at 888-93. Rather, after summarizing those opinions, the

court summarily concludes that "Acosta failed to meet his burden of establishing that his suit is timely." *Id.* at 893.

Phillips then argues that the *Acosta* opinion is factually distinguishable because Acosta suffered traumatic injuries in 1993-1994 and 2005. [Resp. Br. at 48-49]. This distinction is immaterial. As Acosta explained, *before* the 1993-1994 event, he "was already in pain . . . from 'doing the same [j]ob' for the previous two to three months[,]" and he continued to suffer "the same pain" until he filed his FELA lawsuit in 2010. *Acosta*, 449 S.W.3d at 886. His 2010 medical records, which describe "intermittent low back pain over the preceding fifteen years and frequent exacerbation," lend support to this testimony. *Id.* The traumatic events in 1993-1994 and 2005 informed the court's analysis only because Acosta's own description of those events negated any possibility that he had failed to associate his injury with his work before January 17, 2009.

Phillips's distinction of *Caudill v. CSX Transp., Inc.*, 749 S.E.2d 342 (W. Va. 2013) also hinges on a single factual difference between the two cases—the fact that Caudill complained multiple times to BNSF about his seats and that Phillips never did. Like the traumatic events in *Acosta*, Caudill's seat complaints merely indicate that he possessed critical facts regarding the alleged work-related cause of his injury; neither fact, standing alone, was dispositive on the question of timeliness.

Even if the distinguishing facts in *Acosta* and *Caudill* had been case-dispositive, the *absence* of those facts in this case is irrelevant because BNSF has challenged the legal sufficiency of the evidence actually presented during trial.[14] Because no evidence supports the Majority's ruling that Phillips satisfied his burden to demonstrate compliance with the FELA timeliness requirement, this Court should reverse and render judgment in BNSF's favor.

## III. Phillips's General Complaints Cannot Support a Finding of LIA Liability.

The trial court erroneously held BNSF liable under the LIA—not for any violation on a specific locomotive, but for alleged violations on BNSF's locomotives generally.[15] [4 RR 89; 7 RR 42, 55-56, 61-62]. As a matter of law, general complaints from Phillips and his coworkers that locomotives were "rough riding" or had "bad seats" cannot support a finding of LIA liability. Phillips's cited cases do not hold otherwise.

First, Phillips cites *Urie v. Thompson*, 337 U.S. 163 (1949), claiming that this opinion illustrates why "an injured FELA plaintiff is simply not required to

---

[14] Phillips's failure to file a single written complaint for "rough riding railroad engines" or to "red tag" or "bad order" a seat during his career is relevant only insofar as that failure defeats his LIA claim against BNSF and supports BNSF's claim for contributory negligence against Phillips.

[15] Phillips claims, without citation to the record, that he "identified particular models of BNSF locomotives equipped with unsafe seats and/or shocks, that were subject to excessive vibrations, and that would bottom out as they passed over the tracks." [Resp. Br. at 52]. Whether this statement is true or false, it is not sufficient because Phillips offers no evidence regarding when or how often he encountered these allegedly defective models of which he never complained.

supply such specifics in cumulative trauma/occupational exposure cases." [Resp. Br. at 53]. In fact, that issue was neither raised by the parties nor discussed by the Court.

Second, Phillips cites *Munns v. CSX Transp., Inc.*, 579 F. Supp. 2d 924, 930 (N.D. Ohio 2008) for the proposition that "[a] general description of what caused a plaintiff's injury suffices to bring a claim" but fails to mention that the sentence actually ends with the phrase "under the FELA"—*not* "under the LIA" or "under the FELA and LIA." Phillips also fails to mention that the *Munns* plaintiff actually *did* provide the court with some degree of specificity. Indeed, the *Munns* plaintiff "indicated in his journal the occasions when he rode a locomotive with a defective seat and submitted locomotive worksheets to his employer noting defective seats needing attention"; he also "identified a specific series of locomotives that he believed were defective and provided documentary evidence that he had alerted the railroad of these conditions." *O'Neill v. BNSF Ry. Co.*, No. A10-1987, 2011 WL 4008276, at *4 n.1 (Minn. Ct. App. Sept. 12, 2011) (distinguishing *Munns*, 579 F. Supp. 2d at 928-29)). Unlike Munns, Phillips did not document the LIA defects he allegedly encountered throughout his career.

Third, Phillips cites *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1158 (11th Cir. 2012), an opinion that—in distinguishing BNSF's cited cases, *Tezak* and *O'Neill*, from the facts of that case—highlights the relevance of

those opinions to the issues currently before this Court. Like the plaintiffs in *Tezak* and *O'Neill*, Phillips seeks "redress for cumulative trauma suffered throughout his employment" and is "seeking to make BNSF an insurer of all workplace injuries." *Strickland*, 692 F.3d 1158-59 (citing *Inman v. Baltimore & Oh. R.R. Co.*, 361 U.S. 138, 140 (1959) (holding the FELA is not intended to make railroads insurers of their employees)). Specifically, Phillips "allege[s] that he suffered disabling injuries as a result of cumulative trauma stemming from required activities during his employment by BNSF" and cannot "point to documentation showing that he had ever complained about any of the equipment that allegedly caused his injuries[.]" *Id.* At least three courts, including the United States Court of Appeals for the Eleventh Circuit, have determined that such general allegations and evidence cannot give rise to liability under the Federal Safety Appliance Act ("FSAA").[16] *Id.*; *Tezak v. BNSF R.R. Co.*, No. C09-05212BHS, 2010 WL 3211693, at *2 (W.D. Wash. Aug. 12, 2010); *O'Neill*, 2011 WL 4008276, at *4; *contra Synar*, 2001 WL 1263573, at *19 (reinstating jury's finding of FSAA

---

[16] Strickland's claim, for which "he provide[d] allegations about a specific injury-causing event, identifie[d] a specific date, and narrow[ed] the number of railcars which could have contained the defective handbrake[,] . . . is precisely what the FELA was meant to remedy." *Strickland*, 692 F.3d at 1159.

liability that trial court disregarded for lack of specific evidence). The same must be true under the LIA.[17]

As BNSF's cited authority explains, railroad companies are not meant to be the insurers of their employees. In a case, like this one, where an employee complains of injury sustained over the entire course of his career but offers no evidence tying his complaints to any particular locomotive or locomotives, he cannot recover under the LIA. Accordingly, this Court should reverse and render judgment for BNSF on Phillips's LIA claim.

## IV. The Court of Appeals Erroneously Employed Inconsistent Standards In Affirming Both the Jury's Finding of Negligence and the Trial Court's Failure to Submit Contributory Negligence.

The Majority affirmed the trial court's decision not to submit the issue of Phillips's contributory negligence to the jury on the basis that "a jury could at most find a possible [causal] relationship" between Phillips's negligence and his injury. [Maj. Op. at 50-51]. In an FELA action, however, the same standard of causation that applies to a railroad's alleged negligence must be applied equally to the plaintiff's alleged contributory negligence. *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 166-67 (2007). Moreover, an FELA "defendant is entitled to a contributory

---

[17] Phillips's attempt to distinguish *Tezak* and *O'Neill* on the basis that those opinions concern claims under the FSAA, rather than the LIA, goes nowhere. As BNSF explained in its opening brief, both the LIA (which applies to locomotives) and the FSAA (which applies to cars) impose an absolute duty to provide safe equipment, and a violation of either constitutes negligence per se. *Keane v. Ne. Ill. Commuter R.R. Corp.*, No. 01-C-43, 2002 WL 1806919, at *2 (N.D. Ill. 2002). Accordingly, courts apply similar reasoning in LIA and FSAA cases, and FSAA cases are instructive. *O'Neill*, 2011 WL 4008276, at *4 n.1.

negligence instruction if there is *any* evidence to support that theory." *Sloas v. CSX Transp., Inc.*, 616 F.3d 380, 392 (4th Cir. 2010) (quoting *Wilson v. Burlington N., Inc.*, 670 F.2d 780, 782 (8th Cir. 1982)) (emphasis added); Tex. R. Civ. P. 278. Accordingly, if the evidence was sufficient to support a negligence issue against BNSF for its supposed failure to protect Phillips from allegedly rough riding locomotives, it also was sufficient to support a contributory negligence issue against Phillips based on his failure to protect himself from those same locomotives.

Here, Phillips controlled the ride quality each time he operated a locomotive and, therefore, had as much—if not more—of an ability to protect himself from "rough riding railroad engines" as did BNSF. [6 RR 146; 7 RR 59]. As BNSF previously explained, Phillips exercised that control unreasonably and *not* "in the manner which the employer directed." [*See* BNSF Br. at 37 (citing 6 RR 143-44; 7 RR 46, 54-56, 119; 15 RR Def.'s Ex. 1, 11-12, 14)); Resp. Br. at 55-56 (citing *Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1280 (3d Cir. 1995))]. Because competent evidence supports BNSF's contributory negligence theory, the Majority erred by affirming the trial court's refusal to submit Phillips's contributory negligence to the jury, and the appellate court's judgment should be reversed.

**V.**    **The Court of Appeals Erroneously Affirmed Evidentiary Rulings That Rest Upon a Misapprehension of the Record, Destroyed BNSF's Right to Cross-Examination, and Allowed Phillips's Evidence to Go Unrebutted.**

A trial court abuses its discretion when it unfairly restricts a party's ability to cross-examine witnesses and rebut evidence in a meaningful way. *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314 (Tex. 1987). Because the Majority upheld several evidentiary rulings that destroyed BNSF's opportunity to cross-examine Phillips's witnesses meaningfully and prevented BNSF's presentation of rebuttal evidence, this Court should reverse the appellate court's judgment.

According to Phillips, the trial court properly excluded BNSF's evidence "because it was speculative, mere conjecture, irrelevant and/or cumulative of other evidence." [Resp. Br. at 57]. Neither the record nor Phillips's cited cases support this statement. For example, in discussing BNSF's proffered general causation evidence that heredity or genetic factors are a more likely cause of spondylolysis, Phillips fails to address any of BNSF's cited cases that recognize its probative value. [*Compare* BNSF Br. at 41-43, *with* Resp. Br. at 58-59]. Instead, Phillips cites a wholly inapposite opinion in which the defendant had stipulated to liability and, therefore, causation. [Resp. Br. at 58 (citing *Amoco Chems. Corp. v. Stafford*, 663 S.W.2d 147, 150 (Tex. App.—Houston [1st Dist.] 1983, no writ) (trial court excluded evidence that the plaintiff was an alcoholic as prejudicial in trial concerning damages)]. Phillips also cites the eggshell plaintiff rule, which has no

application in this situation because the principle that a "tortfeasor takes the plaintiff as he finds her" applies when a plaintiff is predisposed to an injury caused by a defendant's tortious act. [Resp. Br. at 58-59 (citing *Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 689 (Tex. App.—Dallas 2000, no pet.))]. In other words, it contemplates a predisposition *and* a tortious act. BNSF sought to introduce evidence that a plaintiff's genetic makeup can cause the development of spondylolysis without any contributing locomotive vibration—not that Phillips was genetically predisposed to being injured by whole-body vibration.

Even more egregious than Phillips's misleading discussion of legal authorities is his fictitious account of what transpired during trial. Phillips continues to insist that Dr. Spengler's genetics testimony "was played for the jury in its entirety" and expresses disbelief that BNSF persists in its efforts to provide an accurate, honest, and contextual explanation of why that is not true. [Resp. Br. at 57-58, n.28]. As Phillips is well aware, the genetics testimony was excluded and played for the trial court—not the jury—*as an offer of proof.* [BNSF Br. at 43-45]. The record speaks for itself, and BNSF will not belabor this point.

Next, in defending the trial court's decision to exclude testimony that Phillips's coworkers do not believe they were harmed by riding in locomotives, Phillips cites a single case providing that the absence of prior claims for compensation based on a particular occupationally-related disease has little

relevance. [Resp. Br. at 59-60 (citing *Charter Oak Fire Ins. Co. v. Perez*, 446 S.W.2d 580, 585-86 (Tex. Civ. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e))]. Here, the relevance of the excluded testimony cannot be disputed reasonably because Phillips opened the door by calling three of his coworkers to testify that BNSF's locomotives were rough riding and that the seats were bad. If proper cross-examination had been permitted, all three would have admitted that they did not believe they had been injured. [5 RR 99-100; 9 RR 80-81]. By excluding this relevant and powerful rebuttal testimony and preventing BNSF from delving fully into all matters connected with the examination in chief, the trial court committed error. *Davidson*, 737 S.W.2d at 314.

Lastly, Phillips defends the trial court's exclusion of BNSF's geometry car video, arguing that, "[a]lthough the trial court determined it would be cumulative of another video already offered by the plaintiff's expert, [BNSF's] fact witness was permitted to discuss the subject matter of the video." [Resp. Br. at 60-61]. Notably, however, Phillips makes no effort to challenge or even address BNSF's points as to why neither of these statements is true. [*See* BNSF Br. at 47-49]. Instead, Phillips avoids those issues entirely, asserting that "BNSF was given the opportunity by the trial court to explain how the video was not cumulative of other evidence, and BNSF offered no explanation." [Resp. Br. at 61]. The record does not reveal any such "opportunity." [9 RR 80 ("It's difficult not to see where this

would be cumulative anyway. So no, in answer (sic) your question.")]. Moreover, there is no question that the trial court's exclusion of the video probably caused the rendition of an improper judgment. If a picture is worth a thousand words, a video is worth a million. Because the geometry car video, which objectively depicts track conditions between Clovis and Belen, was necessary to rebut the video prepared by Johanning, the Majority should have reversed based on the trial court's erroneous exclusion of that evidence.

## PRAYER

For all of the reasons set forth above, BNSF respectfully requests that this Court grant its Petition for Review, reverse the court of appeals' judgment, and render judgment in BNSF's favor or, alternatively, grant its Petition for Review, reverse the court of appeals' judgment, and remand for a new trial.

Respectfully submitted,


*/s/ Marianne M. Auld*
David E. Keltner
State Bar No. 11249500
david.keltner@kellyhart.com
Marianne M. Auld
State Bar No. 01429910
marianne.auld@kellyhart.com
Jody S. Sanders
State Bar No. 24051287
jody.sanders@kellyhart.com
Mary H. Smith
State Bar No. 24075093
mary.smith@kellyhart.com
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Telephone:  817.332.2500
Telecopier:  817.878.9280

**ATTORNEYS FOR PETITIONER
BNSF RAILWAY COMPANY**

## CERTIFICATE OF COMPLIANCE

1.  This reply brief complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4(i)(2)(D) because it contains 7,474 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

2.  This reply brief complies with the typeface requirements of Texas Rule of Procedure 9.4(e) because this brief has been prepared in a proportionally spaced typeface using "Microsoft Word 2010" in fourteen (14) point "Times New Roman" style font.

*/s/ Marianne M. Auld*
Marianne M. Auld

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served on the following Respondent's counsel of record via electronic filing on the 3rd day of April, 2015:

Fredric A. Bremseth
**BREMSETH LAW FIRM, P.C.**
601 Carlson Parkway
Suite 995
Minnetonka, Minnesota  55305
Email: fbremseth@bremseth.com

Sean Cox
**LAW OFFICES OF SEAN R. COX**
P.O. Box 130864
Dallas, Texas  75313
Email: scox@coxappellate.com

Scotty MacLean
**MACLEAN LAW FIRM**
3500 Hulen Street, Suite 100
Fort Worth, Texas  76107
Email: smaclean@macleanfirm.com

*/s/ Marianne M. Auld*
Marianne M. Auld