# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 19, 2024

Lyle W. Cayce
Clerk

No. 23-30552

———————

Derek Paul Smith,

*Plaintiff—Appellant*,

*versus*

BP Exploration & Production, Incorporated; BP America Production Company,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-4391

———————————————————

Before Richman, *Chief Judge*, and Oldham and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Derek Paul Smith appeals the district court's dismissal of his claims against BP Exploration and Production, Inc. and BP America Production Company (collectively, "BP") stemming from the *Deepwater Horizon* oil spill in 2010. The district court dismissed the claims as untimely. We affirm.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30552

## I

The *Deepwater Horizon* oil spill prompted hundreds of claims, which were assigned to the Honorable Carl J. Barbier as part of a multi-district litigation.[1]  In 2013, Judge Barbier approved the Medical Benefits Class Action Settlement Agreement (MSA), which compensates those affected by the oil spill and clean-up efforts.[2]  Relevant here, the MSA provides a Back-End Litigation Option (BELO) for those alleging a Later-Manifested Physical Condition (LMPC)—which is defined in part as a physical condition first diagnosed after April 16, 2012.[3]  The MSA requires those seeking compensation from BP for an LMPC to submit a Notice Of Intent To Sue (NOIS) to the Medical Benefits Claims Administrator within four years after either the first diagnosis of their LMPC or the effective date of the MSA, whichever is later.  If they fail to do so, their claims to recover for their LMPCs are released.

Derek Paul Smith worked as a clean-up worker and boom decontaminator for the *Deepwater Horizon* oil spill and is a class member bound by the MSA.  In July 2014, Smith was diagnosed with Congestive Heart Failure, Unspecified Fibrillation, and Persistent Atrial Fibrillation, which he now attributes to his exposure to crude oil and chemical dispersants during the oil-spill clean-up.  At the time of his diagnosis, however, Smith's physicians told him his heart condition was likely caused by his weight and difficulty breathing.  Moreover, Smith never received notice of the class action settlement, did not read the newspaper or listen to the radio, and was

---

[1] *See In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352, 1356 (J.P.M.L. 2010).

[2] *See In re Deepwater Horizon*, 295 F.R.D. 112, 119-20 (E.D. La. 2013).

[3] *See id.* at 124-25.

unaware of the MSA terms. Accordingly, Smith did not submit his NOIS until January 28, 2022—more than seven years after his diagnosis. On November 4, 2022, Smith filed a BELO action against BP, seeking to recover for his exposure during the oil-spill clean-up.

BP moved to dismiss Smith's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing the MSA's four-year NOIS requirement was triggered by Smith's 2014 diagnosis and his suit was therefore untimely. The magistrate judge issued a report and recommendation, which the district court adopted, that recommended granting BP's motion but allowing Smith to amend his complaint. Smith amended his complaint, and BP again moved to dismiss the amended complaint as untimely. This time, the magistrate judge recommended that BP's motion be granted and the amended complaint be dismissed with prejudice. Over Smith's objection, the district court adopted the recommendation and dismissed Smith's amended complaint. Smith then moved to alter or amend the judgment under Federal Rule of Civil Procedure 59, which the district court denied. Smith timely appealed.

## II

We review a district court's dismissal under Rule 12(b)(6) de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling

---

[4] *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

No. 23-30552

on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[6]

The issue in this case is whether Smith has alleged sufficient facts to indicate he timely submitted his NOIS to the claims administrator—a prerequisite to commencing this suit.[7] "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[8] Smith does not argue, nor could he, that he submitted an NOIS within four years after he was first diagnosed with his LMPCs as required by the MSA. His complaint concedes he was diagnosed with his LMPCs in July 2014, and he submitted an NOIS on January 28, 2022. Accordingly, Smith's complaint must "raise some basis for tolling or the like" if he is to survive BP's motion to dismiss.[9]

––––––––––––––––––––––––––––

[6] *Jackson v. City of Hearne*, 959 F.3d 194, 204-05 (5th Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[7] To the extent Smith appeals the district court's denial of his motion to alter or amend the judgment under Federal Rule of Civil Procedure 59 and the district court's rejection of his fraudulent concealment argument, he has failed to brief these issues. Accordingly, Smith has waived these arguments. *See United States v. Gentry*, 941 F.3d 767, 791 (5th Cir. 2019) ("Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned." (internal quotation marks omitted) (quoting *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992))).

[8] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

[9] *Id.*; *see also Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 438 (5th Cir. 2021) (applying Louisiana law and stating: "[t]he burden of proof is normally on the party pleading prescription; however, if on the face of the petition it appears that prescription has run, . . . the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period based on the equitable doctrine of *contra non valentem.*" (internal quotation marks omitted) (quoting *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 388-89 (5th Cir. 2021))).

No. 23-30552

On this point, Smith relies on application of the "discovery rule," which provides that a cause of action does not accrue until "a plaintiff has had a reasonable opportunity to discover the injury, its cause, and the link between the two."[10] Smith argues the four-year NOIS requirement did not begin running in 2014 because a reasonable person in his position would not have discovered the cause of his injury at that time. Smith suggests 2021 is when the four-year NOIS requirement began running because, according to Smith, "the first directly relevant study" reporting a causal connection between Smith's cardiovascular symptoms and his exposure to crude oil and dispersants was published in 2021. BP rebuts Smith's contention with two arguments: (1) the discovery rule cannot apply to the MSA; and (2) even if the discovery rule may apply, Smith nonetheless has failed to allege a basis for the application of the discovery rule in this case. Because we agree with BP's second argument, we do not address whether the discovery rule can apply to the MSA.[11]

Neither party states nor argues what law we are to apply when addressing whether Smith has alleged a basis for application of the discovery rule, and they cite cases applying the discovery rule under Texas, Louisiana, and general maritime law. Notably, the MSA states that it is governed by general maritime law, and the suit was brought in Louisiana.[12] However,

---

[10] *Pretus v. Diamond Offshore Drilling, Inc.*, 571 F.3d 478, 481 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Crisman v. Odeco, Inc.*, 932 F.2d 413, 415 (5th Cir. 1991)).

[11] *Cf. In re Deepwater Horizon*, No. 20-30673, 2021 WL 4888395, at *3 (5th Cir. Oct. 19, 2021) (per curiam) (unpublished) ("[W]e need not decide whether the doctrine of equitable tolling applies in this context because, even if it did, the class members' complaints fail to provide us with any plausible reason it would apply *here*.").

[12] *See* Medical Benefits Class Action Settlement Agreement, as Amended on May 1, 2012 § XXX.P, *In re Deepwater Horizon*, 295 F.R.D. 112 (E.D. La. 2013) (No. MDL 2179) ("Notwithstanding the law applicable to the underlying claims, which the PARTIES

because Smith fails regardless of the law we apply, we need not determine which is correct at this point.[13]

The discovery rules under Texas, Louisiana, and general maritime law are similar. In *Pretus v. Diamond Offshore Drilling, Inc.*,[14] a case involving the Jones Act and general maritime law, we stated the discovery rule provides that a cause of action does not accrue until "a plaintiff has had a reasonable opportunity to discover the injury, its cause, and the link between the two."[15] Applying the Texas discovery rule in *USPPS, Ltd. v. Avery Dennison Corp.*,[16] an unpublished opinion, we stated "an action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury."[17] Similarly, in *In re Taxotere (Docetaxel) Products Liability Litigation*,[18] we stated that, under Louisiana's *contra non valentim* discovery rule, prescription (Louisiana's statute of limitations) does not begin "where the cause of action is not known or

---

dispute, this MEDICAL SETTLEMENT AGREEMENT and the RELEASE hereunder shall be interpreted in accordance with General Maritime Law."); *see also Collins v. BP Expl. & Prod. Inc.*, No. 4:19-CV-2198, 2020 WL 7658068, at *3 n.20 (S.D. Tex. Aug. 5, 2020) (noting BELO cases that have applied maritime law when analyzing causation element).

[13] *Cf. McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 434 & n.2 (5th Cir. 2020) (per curiam) (unpublished) (stating a determination of the appropriate causation standard in BELO cases is "unnecessary in light of [the plaintiff's] inability to meet any plausible causation standard" after plaintiff argued "we should apply a different causation standard" "because the MSA is governed by general maritime law").

[14] 571 F.3d 478 (5th Cir. 2009).

[15] *Id.* at 481 (internal quotation marks omitted) (quoting *Crisman v. Odeco, Inc.*, 932 F.2d 413, 415 (5th Cir. 1991)).

[16] 326 F. App'x 842 (5th Cir. 2009) (per curiam) (unpublished).

[17] *Id.* at 847 (internal quotation marks omitted) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

[18] 995 F.3d 384 (5th Cir. 2021).

reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant."[19]  Regardless of the applicable law, Smith failed to allege sufficiently that he could not have reasonably known of his cause of action before January 2018—four years before he filed his NOIS.

First, Smith has not alleged sufficient facts to indicate a reasonable person in his position would not have investigated the cause of his LMPCs by January 2018.  Smith heavily relies on our opinion in *Jack v. Evonik Corp.*,[20] which applied Louisiana law, to argue he sufficiently alleged that his failure to investigate the cause of his LMPCs was not unreasonable.  In *Jack*, we said the first relevant inquiry when applying Louisiana's discovery rule is whether "a reasonable man with [the plaintiff's] education and experience should have suspected—without any indication to the contrary—that the cause [of the relevant injuries] was something out of the ordinary."[21]  We then concluded that "[u]nder the specific facts of th[at] case, the answer [was] no."[22]

Smith's allegations stand in contrast to the facts of *Jack*.  In *Jack*, the plaintiff alleged the emissions from a petrochemical plant, which was roughly three miles from where he lived, caused his wife's breast cancer.[23]  At the time of his wife's death, he did not attribute her breast cancer to the facility.[24]  He did not bring a wrongful death suit against the facility until twenty-one

---

[19] *Id.* at 390 (quoting *Morgan v. Entergy New Orleans, Inc.*, 2016-1250, pp. 5, 11 (La. App. 4 Cir. 12/6/17), 234 So. 3d 113, 116, 120).

[20] 79 F.4th 547 (5th Cir. 2023).

[21] *Jack*, 79 F.4th at 563.

[22] *Id.*

[23] *Id.* at 553-54.

[24] *Id.* at 553.

years after his wife's death when a mailer from a law firm advised him that he may have rights against the facility.[25] We held the prescriptive period for the plaintiff's claim did not begin running at the time of his wife's diagnosis because the plaintiff "did not act unreasonably when he failed to inquire further into the cause of his wife's breast cancer."[26] We noted the plaintiff "had no connections to the plant, had lived in the same small town all his life, was computer illiterate, and had no medical training."[27] We also noted the plaintiff did not work "for an allegedly tortious employer" and "cannot be held, with nothing more, to be suspicious of invisible and unknown emissions of surrounding companies or to embark independently on an investigation of the inner workings of an otherwise ordinary plant."[28]

Here, Smith's alleged harms were not inflicted from "unknown emissions of surrounding companies" to which he had no connection. Smith alleges his injuries resulted from his work as a clean-up worker during the *Deepwater Horizon* oil spill, where he knowingly came into contact with "oil, other hydrocarbons, chemical dispersants, and other toxic substances." Indeed, Smith's affidavit, which is attached to his complaint, states he "developed skin issues, shortness of breath, and other pulmonary medical conditions within weeks after [his] exposure" and he "suspected that [his] breathing and skin issues were caused by [his] exposure to COREXIT and oil during the BP Oil Spill." Smith has not pleaded that he did not have enough

_____

[25] *Id.*

[26] *Id.* at 563.

[27] *Id.*

[28] *Id.* at 564.

information "to excite attention and put [him] on guard and call for inquiry" before January 2018.[29]

Smith nonetheless argues that he relied on BP's representations that his exposure was not harmful and on his doctor's statements that his LMPCs were likely due to his weight and difficulty breathing rather than his exposure. However, even if he relied on these statements to some extent, Smith's pleadings still do not plausibly suggest his lack of investigation was reasonable. Smith's affidavit reveals he suspected soon after his exposure that he was suffering adverse health effects as a result of the exposure. Moreover, presumably in light of this suspicion, he informed his physicians about his exposure, to which they responded his LMPCs were "*likely*" caused by other factors. They did not foreclose the possibility that Smith's LMPCs were caused by his exposure.[30] Smith's affidavit—which explains Smith researched his health problems at a later date—also reveals he was capable of researching whether his health problems were caused by his work on the oil spill. In light of these facts, his complaint fails to allege sufficiently that his actions after his diagnosis were reasonable.[31]

───────────────────

[29] *Jack*, 79 F.4th at 562 (internal quotation marks omitted) (quoting *Campo v. Correa*, 2001-2707, pp. 11-12 (La. 6/21/02), 828 So. 2d 502, 510-11).

[30] *See Guerin v. Travelers Indem. Co.*, 2019-0861, p. 9 (La. App. 1 Cir. 2/21/20), 296 So. 3d 625, 631 (holding plaintiff's reliance on physician's explanation of the cause of his cancer was not reasonable "in light of the knowledge that he possessed").

[31] *See Clay v. Union Carbide Corp.*, 828 F.2d 1103, 1107 (5th Cir. 1987) (applying general maritime law and holding plaintiff "possessed or had reasonable opportunity to discover the critical facts of his injury and its cause" when he had knowledge of ailments near the time of his exposure to toxic substances that were similar to his later diagnosis of "chronic respiratory complaints"); *cf. Sansom v. Mintz*, 781 F. App'x 359, 361-62 (5th Cir. 2019) (per curiam) (unpublished) (applying Texas discovery rule and holding "if [plaintiff] was suspicious enough [to inquire into defendant's alleged misconduct], he was apparently apprised of facts that would prompt a reasonably diligent person to make an inquiry that would lead to discovery of the cause of action" (internal quotation marks omitted)).

Second, Smith does not sufficiently allege that a reasonable investigation of the cause of his LMPCs before 2018 would have been fruitless. In *Jack*, we noted that "[i]f the facts are not capable of discovery, then the claim cannot be time-barred" even if the plaintiff did not conduct a reasonable investigation.[32] According to Smith, he could not have discovered the causal connection between his exposure and his LMPCs until 2021, when "the first directly relevant study" reporting a causal connection between Smith's cardiovascular symptoms and his exposure to crude oil and dispersants was published.

Even assuming Smith's conclusory allegation that the 2021 article was the "first directly relevant study reporting a causal connection," we have noted "[p]laintiffs are not entitled to wait to sue until they are certain of what and/or who caused their injury."[33] While the 2021 article may be the best evidence of causation at trial, the fact that it was the first directly relevant study does not indicate that a reasonable investigation would not have put Smith on notice that his exposure during the oil-spill clean-up could have caused his LMPCs.

Indeed, Smith's own affidavit reveals he conducted his own research of "published scientific literature" and found "medical support linking [his] recurring heart conditions with the chemicals [he] was exposed to during the BP Oil Spill" in the Summer of 2020. Not only does Smith's affidavit suggest evidence of a causal connection was available before 2021, but it suggests

---

[32] *Jack v. Evonik Corp.*, 79 F.4th 547, 563 n.27 (5th Cir. 2023); *see also Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 231 (5th Cir. 1984) (applying general maritime law and stating "[l]ogic and sound jurisprudence mandate the conclusion that a plaintiff's cause of action does not accrue . . . until the injury and the cause *are knowable*" (emphasis added)).

[33] *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 392 (5th Cir. 2021).

No. 23-30552

Smith was capable of researching "published scientific literature." In this vein, the 2021 article he relies on—which we consider since it was incorporated into the complaint by reference[34]—cites several scientific articles pre-dating his diagnosis that indicate a causal connection between oil-spill clean-ups and cardiovascular symptoms.[35] Accordingly, Smith's complaint and the documents it incorporated reveal a reasonable inquiry by Smith at the time of his diagnosis would have revealed these studies.

Moreover, Smith's initial complaint incorporated the medical class action complaint, and though he removed it from his amended complaint, we now take judicial notice of it.[36] Smith concedes he is a member of the medical class, and the medical class action complaint recognized "the dispersants used by BP are known to cause" "chest pains and tightness;" "breathing difficulties and respiratory system damage;" " hypertension;" and "cardiac arrythmia; cardiovascular damage; and increased severity of chronic obstructive pulmonary disease."[37] As discussed previously, Smith's affidavit reveals that he is a capable researcher and that he had early suspicions that his exposure to chemicals during the oil-spill clean-up caused adverse health effects. Given all of this information, Smith's complaint suggests a reasonable inquiry by him at the time of his diagnosis would likely have revealed that he was part of this class and that the complaint recognized a causal connection between his exposure and symptoms similar to his

---

[34] *See Jackson v. City of Hearne*, 959 F.3d 194, 204-05 (5th Cir. 2020).

[35] *In re Taxotere*, 995 F.3d at 393 ("[W]e conclude that medical literature linking Taxotere to permanent hair loss is relevant insofar as [plaintiff's] reasonable inquiry would have uncovered it.").

[36] *See Jackson*, 959 F.3d at 204-05.

[37] Complaint at 15, 19, *In re Deepwater Horizon*, No. 2:12-CV-968 (E.D. La. Apr. 16, 2012).

LMPCs. Smith's complaint does not plausibly allege that, before 2018, a reasonable inquiry by him would not have revealed a causal connection between his LMPCs and his exposure.[38]

Accordingly, Smith's complaint fails to "raise some basis" for application of the discovery rule.

\* \* \*

We AFFIRM the district court's judgment.

---

[38] *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015) (applying Texas discovery rule and holding plaintiffs' allegations were "insufficient to show that their injury was 'inherently undiscoverable'").